PEOPLE *v.* BECKER.

1. CRIMINAL LAW—MANSLAUGHTER—EVIDENCE.

In prosecution for manslaughter, evidence *held,* sufficient to sustain conviction.

2. HOMICIDE—MANSLAUGHTER—BLOODY EXHIBITS—PICTURES.

In prosecution for manslaughter, the admission in evidence of bloody garments, picture of bloodstained gun found in deceased's boat and picture of deceased in the nude was not error where such exhibits had some tendency to show the course of the fatal bullet, a matter bearing materially upon people's claim that defendant did not shoot in self defense.

3. CRIMINAL LAW—MANSLAUGHTER—POLYGRAPH TESTS.

In the absence of testimony showing that presently there is a general scientific recognition of tests by a polygraph, or lie detector, it was not error to refuse admission in evidence of result of test by such apparatus in prosecution for manslaughter when offered by defendant.

Appeal from Ogemaw; Shaffer (John C.), J. Submitted January 15, 1942. (Docket No. 68, Calendar No. 41,342.) Decided February 11, 1942.

Fred Becker was convicted of manslaughter. Affirmed.

*Joseph & Joseph* and *Dale Showley,* for appellant.

*Herbert J. Rushton,* Attorney General, *Melvin E. Orr,* Prosecuting Attorney, for the people.

SHARPE, J. Defendant, Fred Becker, was tried, convicted and sentenced for the crime of manslaughter. At about 7:30 in the morning of November 17, 1939, defendant and one Edward Vaughn

met near a small island in Au Sable Lake in Ogemaw
county. Both defendant and Vaughn were in their
respective rowboats. As the boats approached each
other, until they were separated by a distance of
about 15 or 20 feet, an argument ensued concerning
certain trapping rights. Shortly thereafter, shoot-
ing began and sometime later Vaughn was found
on the shore in an unconscious condition. He was
rushed to a hospital and died without regaining
.consciousness.

An autopsy was performed upon Vaughn's body
and it was disclosed that a rifle bullet entered the
abdomen to the right and slightly above the umbil-
icus and passed upward to the left costal margin,
striking the edge of the ribs, and finally lodged in
the upper part of the left arm. The bullet in its
course did not penetrate any bone. The cause of
death was a hemorrhage due to the wound caused
by the rifle bullet.

Following the shooting, defendant rowed away.
He went to his mother's home and told her of the
shooting. He then went to his own cabin where he
secured an acquaintance to drive him to a store a
short distance away, in order that he might telephone
the State police. He remained at the store until the
State police arrived. He was then taken to West
Branch and placed in the custody of the sheriff.
He made a statement to the State police and to the
prosecuting attorney. He later submitted himself
to the so-called lie detector, but at the trial of the
cause the result of this test, upon the objection of
the prosecuting attorney, was not submitted to the
jury.

During the trial of the cause, the prosecuting at-
torney introduced in evidence, over defendant's ob-
jection, a picture of the gun found in Vaughn's
boat, the purpose being to show what appeared to

be blood stains upon the gun. The garments worn by Vaughn on the day of the shooting were also introduced in evidence and one witness testified that they were saturated with blood. Another exhibit was a picture of the deceased in the nude. A motion for a mistrial was made by defendant because of the introduction of these exhibits. This motion was denied.

Defendant claims that on the morning in question he was out on the lake; that he had an argument with Vaughn over trapping rights, when Vaughn suddenly picked up a shot gun and fired it at defendant; that the ball went so close to defendant that it caused deafness in one ear and defendant, being in fear of his life, immediately picked up a rifle and returned the fire; that Vaughn then got out of his boat; and that defendant then rowed away to the home of his mother.

It is urged by defendant that the circumstantial evidence produced by the prosecuting attorney was not sufficient to prove the crime beyond a reasonable doubt. The evidence relied upon by the prosecuting attorney as indicating that the bullet was fired from a distance of more than 20 feet, and not as claimed by defendant, is that hunters heard shots in that vicinity about the time of the shooting as related by defendant, but none of these witnesses heard shots in rapid succession as stated by defendant; that all of these witnesses stated that at least four or five minutes elapsed between shots; and that the bullet entered Vaughn's body to the right of the navel, moved upward to the left and into the left arm and did not penetrate a bone, but lodged in the fleshy part of the arm.

We have related only a part of the evidence relied upon by the prosecuting attorney. In our opinion there was competent evidence from which a jury

could determine that defendant was guilty beyond a reasonable doubt of the crime alleged.

It is urged that the trial court was in error in receiving in evidence the. bloody garments and the pictures. The general rule upon the admissibility of this kind of evidence is that it is admissible if helpful in throwing light upon any material point in issue. In the case at bar, the pictures and the clothing had some tendency to show the course of the bullet. This was material to the people's claim that defendant did not shoot in self defense. We find no error in the admission of the exhibits.

It is also urged that the trial court was in error in refusing to allow the results of the polygraph, or the so-called lie-detector test, to be admitted in evidence. In the case at bar, the result of this test was offered by defendant and, upon objection by the prosecuting attorney, the trial court refused its admission.

The general principle of the acceptance of the lie-detector test is set forth in 20 Am. Jur. p. 633:

"Physiological or psychological deception tests used as instruments for the ascertainment of the truthfulness of a witness are still too much in the experimental field for the courts to approve of their general use. The deception tests devised by scientists are of the following three broad types: The association-reaction tests in which the time the subject takes to think of words associated with those in a list given him, some of which are neutral and some of which may evoke a guilty association, is carefully measured; the respiratory test, which is based upon the hypothesis that the breathing of the subject varies according to whether he is telling the truth; and the systolic blood pressure test. The instances in which such criteria have been subjected to judicial scrutiny are relatively infrequent. Those which have passed upon the question have held that

the systolic blood pressure deception test for determining the truthfulness of testimony has not yet gained such standing and scientific recognition as to justify the admission of expert testimony deducted from tests made under such theory.''

We see no reason why, under the circumstances of this case, the result should have been admitted. There was no testimony offered which would indicate that there is at this time a general scientific recognition of such tests. Until it is established that reasonable certainty follows from such tests, it would be error to admit in evidence the result thereof.

The evidence sustains the trial court in his refusal to direct a verdict in favor of defendant or to grant a new trial. The judgment is affirmed.

Chandler, C. J., and Boyles, North, Starr, Butzel, and Bushnell, JJ., concurred. Wiest, J., did not sit.