**AETNA INSURANCE COMPANY et al.,**
**Appellants,**

v.

**BARNETT BROTHERS, INCORPORATED, Appellee.**

**BARNETT BROTHERS, INCORPORATED, Cross-Appellant,**

v.

**AETNA INSURANCE COMPANY et al.,**
**Appellees.**

**Nos. 16490, 16494.**

United States Court of Appeals
Eighth Circuit.
April 19, 1961.
Rehearing Denied June 1, 1961.

Paul W. Steward, Des Moines, Iowa, A. B. Crouch and Patrick D. Kelly, Des Moines, Iowa, on the brief, for Barnett Brothers, Inc.

Samuel Levin, Chicago, Ill., and Ronald M. Glink, Chicago, Ill., and Joseph I. Brody and Charles E. Harris, Des Moines, Iowa, on the brief, for Aetna Ins. Co. et al.

Before WOODROUGH, VAN OOSTERHOUT and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was for recovery of the amount of loss by fire upon twelve fire insurance policies issued to the plaintiff, insuring its stock of furniture located in a warehouse building on Third street in Des Moines, Iowa, which burned together with its contents on May 18, 1958. There was diversity of citizenship and federal jurisdiction. The affirmative defenses pleaded by the insurance companies were arson and misrepresentation, fraud and false swearing attributable to plaintiff concerning the arson and the amount of the loss. The jury found against defendants and in answer to a special interrogatory found that the fire involved was not an arson fire. The verdict was for $65,460.06, being the amount computed by the accountants called by the defendants, which was considerably less than the amount computed by the plaintiff's accountant. The defendants appeal and contend for reversal in substance:

1. That the verdict for the plaintiff on the issues of (a) arson and (b) misrepresentation, fraud and false swearing was contrary to all the evidence, which appellants argue established the defenses as a matter of law.

2. That the Court erred in excluding evidence proffered by defendants that the witness Ben Leventhal refused to take a lie detector test.

3. That the Court erred in failing to declare a mistrial.

4. That the Court erred in limiting appellants in their argument to the jury.

Plaintiff, Barnett Brothers Incorporated, has cross-appealed and contends that the Court erred in denying its motion to add interest to the amount of the verdict either from a date sixty days after proof of loss or from the date of filing the complaint or from the dates when answers were filed or from such other date as the Court shall deem proper.

The policies contain provision that the company shall not be liable for loss by fire caused directly or indirectly by neglect of the insured to use all reasonable means to save and preserve the property at and after loss and the defense of arson was raised under this provision. The policies also contain provisions which void the insurance " * * * if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, * * * or in case of any fraud or false swearing by the insured relating thereto." The arson defense was also asserted in a charge that the officer of plaintiff corporation, Louis Barnett, falsely stated and swore that he did not know the cause of the fire when in truth he had knowledge of the cause.

■ The evidence relating to the charge of arson is voluminous and has been carefully examined. It is entirely circumstantial as no witness testified to any act of incendiarism. No material was found of such character or so placed that any one claims it may have been used to start the fire.

The sole owner of the corporate capital stock of the plaintiff corporation is Virginia Barnett, a tiny lady sixty one years old as to whom counsel for defendants said to the jury in closing argument, "[t]his lady wasn't involved in this, I mean the planning of this fire." No other person was shown to have had any financial interest in the property or in burning it. The presumption against criminal arson was also buttressed by proof that men working in the warehouse in the afternoon before the fire were smoking cigarettes. The electrical system was knocked out and fuses were blown or broken because of shorts in the wiring and the building was filled with material that was highly combustible. Defendants adduced the testimony of experts and persons who examined the ruins after the fire who expressed their opinion that the fire was the result of two or more fires started at or near the same time in different parts of the building, which in their opinion indicated origin by arson. Descriptive photographs and explanations were made at length in support of the claim of simultaneous fires at different places. The expert witnesses sought to define the course that the fire took throughout the building from the traces left in the ruins. But the traces of fire were uneven, heavy in some places and much less charring in others. Though the building was divided by a fire wall, there were openings in it which together with the elevator shaft and holes burned through the ceiling and floors provided means of travel for the fire on each floor and from one floor to the other. All the openings showed plain marks of the passage of the fire through them.

As to misrepresentation, fraud, and false swearing concerning the loss, the jury found the amount of the fire loss to the stock of goods to be $69,390.51 from which $3,930.45 was deducted on account of salvage. In view of the instructions given to the jury the purport of its findings was that the plaintiff's claim for $105,228.59 was an over valuation of some $36,000.00, but that it was not knowingly false or fraudulent.

The evidence is that the proof of loss was prepared by Mr. Freedman, the agent of the defendant insurance companies who had written the insurance,

and the amounts were taken from figures supplied by the certified public accountant, Mr. Sauerman, who is in the supervisory group in the management end of a nationally known accounting firm that had done the accounting work for plaintiff for a number of years. Plaintiff kept a complete set of books and their own bookkeeper, but the accountants had done the posting in the year in question. There was no current physical inventory so that it was necessary to compute the loss from the books and records. An important step in the computation was to determine and apply the proper percentage to use in reducing the sales to a cost of sales basis. The accountant employed by the insurance companies and the accountant employed by the plaintiff, after extensive and laborious investigation and computing, compared their results and there was no important disagreement between them except that Mr. Augustine for the insurance companies used the figure of 65 per cent in computing the cost of sales and Mr. Sauerman for the plaintiff arrived at a figure of 50 per cent for that purpose. Mr. Sauerman justified the use of the 50 per cent figure in his testimony because he had found through conferences and spot checks at the store, "historical data" that was not taken into consideration by Mr. Augustine. Mr. Sauerman swore "I definitely feel that's a fair percentage. Q. What percentage? A. Fifty per cent."

The instructions to the jury accordingly forbade recovery if the 50 per cent figure was false and plaintiff's officer knew it to be false, and they sanctioned recovery for plaintiff only if the officer in signing the proof of loss made the statements in good faith and with an honest belief that the value, loss or damage and the cost of sales were as he stated, and if he did not intend thereby to mislead or defraud the defendants, then such values, loss or damage or cost of sales would not be such a fraudulent misrepresentation or concealment as would prevent plaintiff from recovering in this action even though the proof of loss

stated a cash value or damage in excess of the actual value, loss or damage, or stated a cost of sales less than the actual cost of sales.

The defendants in this case did not move for a directed verdict at the close of the evidence on the trial nor did they request instructions that any of their defenses had been established as a matter of law. On the contrary, they specifically requested a submission of the fact issues to the jury and took no exception to the instructions upon which the case was submitted to the jury. After the verdict had been returned they attempted to raise the question of the insufficiency of the evidence by motion, but the law is firmly settled that upon such a record no law question as to the sufficiency of the evidence to support the verdict of the jury is presented for review by this Court. We have made our examination of the evidence only to be assured that no injustice has been done. But we hold that no law question for review by this Court has been presented as to the sufficiency of the evidence to support the verdict of the jury covering the defenses of arson, misrepresentation, fraud or false swearing or as to the amount of the verdict. Myra Foundation v. United States, 8 Cir., 1959, 267 F.2d 612; United States v. City of Jacksonville, Arkansas, 8 Cir., 1958, 257 F.2d 330; Godwin v. Brown, 8 Cir., 1957, 249 F.2d 356; Een v. Consolidated Freightways, 8 Cir., 1955, 220 F.2d 82; O'Malley v. Cover, 8 Cir., 1955, 221 F.2d 156.

2. The witness Ben Leventhal is a nephew of Virginia Barnett and Louis Barnett and employed in the plaintiff's furniture business as a sales manager. He testified as a witness for plaintiff, his testimony being limited to his participation in the taking and pricing of inventories. Later he was called by defendants and examined under Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. He testified in answer to questions that he had been down to the warehouse and tried the door during the evening preceding the fire and that he had a week or more before the fire re-

quested Vilma Nesset, an errand girl in the store, to go out and purchase some candles which were facts brought out by the defendants in support of their claim of arson.

Application was made to the Court by the defendants out of the presence of the jury to receive an offer of proof that the witness had agreed to take a lie detector test and had later refused to do so. A Professor Holcomb was called into chambers and made a statement before the judge to the effect that he frequently made such tests and that Leventhal had made such agreement and refusal. Appellants made an offer to call him as a witness to so testify, but the Court ruled that no reference could be made in the trial to the refusal of the witness to take the polygraph or lie detector test. The ruling is assigned as error.

■ It is well settled that even in a criminal case the results of a so called lie detector test are not admissible and since results of such a test cannot be admitted against one as evidence of guilt or admitted on his behalf as proof of innocence his refusal to take such a test ought not to be considered probative or received against him. It was so ruled in State v. Kolander, 1952, 236 Minn. 209, 52 N.W.2d 458; State v. Britt, 1959, 235 S.C. 395, 111 S.E.2d 669; Commonwealth v. Saunders, 1956, 386 Pa. 149, 125 A.2d 442 and we are in accord. Reception of evidence that he had refused to take a lie detector test could not have added any real proof on the issues for the jury though it might have accentuated passion and prejudice against Leventhal.

■ 3. The burning of the warehouse and contents gave rise to two actions against the insurance companies which had insured the real and personal property destroyed in the fire under different policies. Virginia Barnett owned the building and she sued the companies for $70,000.00 for that loss, and the corporation, Barnett Brothers Inc., owned the stock in the warehouse and it sued the insurance companies for $111,228.60 on account of that loss. Although the cases were consolidated for trial, the issue as to the amount of the loss in each was distinct and unrelated.

Relating to the amount of the loss on the warehouse, the Court received in evidence without objection an instrument offered by Virginia Barnett identified as exhibit G which was signed by her as the owner of the warehouse and by E. R. Meyers on behalf of the defendant insurance companies. The exhibit is a filled in printed form on one side of a single sheet headed Non-Waiver Agreement upon the upper part. The signatures appear upon the upper part where an agreement is printed that any action taken by the insurance companies in discussing, negotiating or investigating the loss alleged to have occurred to the building shall not waive any of their rights or any conditions of the insuring policies. It states the intent of the agreement to be "determination of the amount of the sound value and loss or damage without regard whatever to liability of the [insurance company]." The testimony of Mr. Freedman was that the signatures were placed on that part of the instrument on June 26, 1958; that on July 12, 1958, after negotiations between Mr. Barnett and Mr. Meyers, an agreement was reached as to the sound value of and the loss and damage to the building; and that thereupon under the heading "Agreement as to sound value, loss or damage" in the lower part of the printed blank it was filled out with a typewriter in Mr. Meyers' office so as to read that "without regard whatever as to the liability of the [insurance companies] for said loss or damage, it is now further hereby agreed * * * that the sound value and loss and damage is as follows: Item No. 1 Sound Value [Virginia Barnett's building] $87,481.63—Loss and Damage $64,038.83."

One copy of the instrument filled out with the signatures on it was delivered to Louis Barnett and the other was retained by Mr. Meyers. Counsel for the insurance companies said on the trial that he agreed "in the Virginia Barnett case", that Mr. Meyers, Branch Manager

of Underwriters Adjustment Company, had authority to enter into the non-waiver agreement on behalf of the companies that he purported to enter into in the agreement exhibit G.

As the lower part of the instrument containing the figures on sound value and loss and damage bore a later date than the top part and was not signed, it needed explanation. Mr. Freedman was present at its execution and testified to the attendant facts and circumstances. The Court was concerned that no evidence of any offer of compromise by the companies should be brought before the jury. The Court recognized that exhibit G was properly received in evidence and also the testimony that it had been filled out at the later date in the office of the authorized agent of the insurance companies.

The record does not show that Mr. Freedman testified to any offer by the companies to compromise either of the cases nor did he say that any such offer had been made. But the Court reached the conclusion that Mr. Freedman in his testimony concerning the circumstances attending the execution of exhibit G had "disclosed things he had no right to have gone into * * * concerning compromise or offers" in the case of Virginia Barnett against the companies and declared a mistrial in that case. In doing so, the Court stated to the jury i. e. that "[n]o such things had been shown in the other case" and also stated "as a matter of fact there is nothing in the evidence to indicate that there have been any offers of settlement of any kind in the Barnett Brothers case." (the case at bar)

Appellants insist that the Court's refusal to declare a mistrial in this case was prejudicial error and cases are cited to the point that evidence of offers of compromise are not admissible in evidence and that in situations where prejudice may be anticipated by proof of such an offer being brought to the attention of the jury, the Court may order a mistrial. But here, as the Court stated, there was no such evidence. There was nothing from which the jury could find that the companies had offered to settle on any basis described or inferable. We think the claim of error in denial of mistrial in this case is without merit.

■ 4. Defendants brought out in cross examination of the witness Freedman, that fires had occurred on other properties belonging to Virginia Barnett within seventeen months prior to the fire in question and that she had been paid under her insurance policy on account of her losses. A motion by plaintiff to strike the testimony was considered in chambers and the Court stated "* * * I did sustain your [plaintiff's] objection and then I concluded that it was a matter that might have some bearing so far as her [Virginia Barnett's] financial status was concerned * * *. [I]t showed her receipt of a substantial sum of money. * * *" The Court also observed concerning the testimony, "I think its only materiality that I see at the moment here may be to show the relationship between the witness [Freedman] and the Barnetts. For that purpose only I'll permit him to go into it." It appeared from the undisputed testimony that the accidental origin of the previous fires was known and that the insurance was paid without question. The Court stated in ruling on the motion for new trial, "as applied to the issue of arson, not a shred of evidence was shown or offered indicating that the previous fires were set by a human agency" and "[n]o legitimate inference supporting arson as to the warehouse or its contents now in question could be drawn from this testimony. * * *"

The point as stated for appellants here is that the Court ordered defendant's counsel not to refer in argument to the jury to these previous fires in connection with the defense of arson. The record does not show such an order given. The record reference is to a statement by the Court in ruling on the motion for new trial that "[t]he Court restricted defendants' counsel from reference to these previous fires on this issue", but the statement apparently refers to colloquy during the examination of the witness

Freedman as to which no point is made. The claim of error is not sustained.

## Cross Appeal

■ The verdict of the jury was returned on November 21, 1959, and thereafter the plaintiff moved to amend, correct and modify the verdict and any judgment entered thereon by addition of interest. On consideration of the motion, the Court cited the Iowa law which is controlling. Illinois Surety Co. v. John Davis Co., 1917, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. The 1958 Code of Iowa, I.C.A., provides:

"Section 535.2. Rate of interest. The rate of interest shall be five cents on the hundred by the year in the following cases * * *

"1. Money due by express contract.

2. Money after the same becomes due."

The Court concluded that the amounts of loss for which the defendants severably were liable was payable sixty days after proof of loss was received by them and ascertainment of the amount of the loss and that without ascertainment of the amount of the loss, the amounts for which the defendants are liable under the policies are not due. The Court held that neither the fact of liability nor the amount due if liability existed was determinable until the return of the verdict. The Court allowed interest only from the date of the judgment. It cited no applicable Iowa decision. The insured cross appellant cites and relies on Collins v. Gleason Coal Co., 1908, 140 Iowa 114, 115 N.W. 497, 118 N.W. 36, 18 L.R.A., N.S., 736; Bridenstine v. Iowa City Electric Ry. Co., 1917, 181 Iowa 1124, 165 N.W. 435; Olson v. Shuler, 1923, 203 Iowa 518, 210 N.W. 453; General Mills Inc. v. Prall, 1953, 244 Iowa 218, 56 N.W.2d 596; Glandon v. Farmers' Mutual Hail Ins. Association of Iowa, 1930, 211 Iowa 60, 232 N.W. 804, 806. Only Glandon v. Farmers' Mutual Hail Ins. Ass'n of Iowa is an insurance case affording direct precedent here. In that

case a hail storm had caused damage to crops of corn and oats insured against such loss by the defendant insurance company. The extent of the damage was disputed. The Iowa Supreme Court said:

"In instruction No. 6, the jury was advised that, when it had determined the question of plaintiff's damages, it should allow him 6 per cent interest thereon from the 20th day of January, 1928. It is insisted that in this kind of a case there is no authority in law warranting this instruction. We have consistently held in tort cases that where the damages are unliquidated, interest may be allowed when ever it appears that a damage was complete at a particular time. In the case of Olson v. Shuler, 203 Iowa 518, 210 N.W. 453, we applied the same rule to an action on a contract. It seems to be the uniform holding in cases of this character that interest is recoverable. See cases in note 49, page 147, 33 C.J."

This decision is not shown to have been reversed by the Supreme Court.

It is contended for the insurance companies that the Iowa Supreme Court intended in the more recent case of Mallory v. Jurgena, 1958, 250 Iowa 16, 92 N.W.2d 387 to settle the Iowa law that where the amount due is uncertain, interest is allowable only from the date of a judgment fixing the amount due.

■■ Although it is a long settled rule in this Court not to reverse the District Court's determination of a doubtful question of state law, we are bound by Erie v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 to follow direct decisions of the State Supreme Court where state law controls as it does to the matter of interest in this case. We think the Court erred in ruling that the plaintiff in this case was not entitled to recover interest until final judgment. As no interest was included in the verdict, the plaintiff's motion to have interest at the statutory rate computed by the Court from the dates of the proofs

of loss added to the judgment should be sustained. Collins v. Gleason Coal Co., 1908, 140 Iowa 114, 115 N.W. 497, 118 N.W. 36, 18 L.R.A.,N.S., 736.

It is adjudged that the judgment appealed from be in all things affirmed except that direction is given to have interest computed at five per cent on the amount of the verdict from the dates sixty days after proofs of loss were received by the companies added to the judgments.