MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, and H. S. Whitlock, an Individual, Plaintiffs in Error,

v.

John HAYES, father and next friend of Laurie Hayes, a minor, seven years of age, Defendant in Error.

No. 41767.

Supreme Court of Oklahoma.

July 16, 1968.

Rehearing Denied Sept. 24, 1968.

See also Okl., 445 P.2d 254.

Doerner, Stuart, Moreland, Saunders & Daniel, Tulsa, for plaintiffs in error.

Baker & Baker, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action by a father for damages on account of personal injuries his minor daughter, Laurie Hayes, suffered in a railroad crossing collision between a 1959 Chevrolet Sedan, driven by a 17-year-old boy named Jimmy Green, and a freight train belonging to the plaintiff in

error, Missouri-Kansas-Texas Railroad Company. The train's engineer, H. S. Whitlock, is the other plaintiff in error.

The location of the accident was the place where the Railroad Company's branch line, extending from Muskogee to Sand Springs, crosses Lynn Lane Road, about a mile southeast of the Railroad's Broken Arrow Station, and outside the latter City's boundaries.

Laurie Hayes was one of three children riding in the Chevrolet's back seat. The driver and another occupant of the auto's front seat were killed instantly, when the auto, traveling south on black-topped Lynn Lane Road, struck the first of the train's two diesel-engined locomotives, about seven feet to the rear of its front end. The train was traveling in a southeasterly direction toward Muskogee. The impact of the collision demolished the front end of the auto and the momentum of the train, before it was stopped, swept the auto to a point about 12 feet east of Lynn Lane Road's right-of-way. When the auto came to rest, it was facing in a northwesterly direction, and damage to its rear indicated that the collision's first impact had turned the auto around, with its rear end forward, and it had then bounced back against the train, before reaching its final resting place.

When Laurie was removed from the wrecked automobile and taken to a hospital in Tulsa, she was unconscious, and remained so for many days thereafter. The injuries she suffered from the accident were a broken leg, a broken jaw, the loss of several teeth, a ruptured liver, head injuries and others unnecessary to describe.

Alleging that the collision was caused by the negligence of plaintiffs in error, hereinafter referred to by their trial court designations of "defendant", Laurie's father and next friend, hereinafter referred to as "plaintiff", sought damages against said defendants in the total sum of $127,700.00. Trial of the cause before a jury resulted in a verdict for plaintiff in the sum of $34,800.00; and judgment was entered accordingly.

In their present appeal, defendants' arguments for reversal are advanced under three propositions. Under the first one, they contend, in substance, that no cause of action was established in plaintiff's favor against them, and therefore the trial court erred in overruling their motions for directed verdicts, because the evidence showed that the sole cause of the collision was the negligence of the Chevrolet's driver. They cite testimony given by the defendant, Whitlock, as "undisputed and uncontradicted" evidence, that the train was traveling at a speed of 15 to 20 miles per hour, and other testimony by George Stratton, the Highway Patrolman, who investigated the accident, and C. J. Halley, an Assistant Professor of Physics at Oklahoma Baptist University, as "undisputed and uncontradicted evidence" that the auto was traveling "somewhere between 45 and 70 miles per hour."

Defendants also refer to two photographs, introduced in evidence at the trial, and designated plaintiff's Exhibit 9, and defendants' Exhibit 2, as showing that the freight train's first locomotive was already occupying the crossing when the auto arrived there. It seems to be defendants' position, in their initial brief, that, because the locomotive was already crossing Lynn Lane Road, when the auto hit it, and the testimony of his father indicated that Jimmy Geren had traveled that road so much he knew exactly where the crossing was, it was said driver's duty to stop the Chevrolet before colliding with the locomotive. A pertinent part of plaintiff's answer to defendants' argument is that the arrival of the train, and the arrival of the auto, at the crossing, were so nearly simultaneous in point of time, and the crossing was so hazardous to motorists that, under Atchison, T. & S. F. Ry. Co. v. Templar, 204 Okl. 460, 230 P.2d 907, the fact that the locomotive was already almost completely across the highway when the auto hit it, did not relieve the defendant railroad company from its duty to warn the auto's driver of the train's approach.

In their reply brief, defendants concede that it is only "in the absence of unusual circumstances" rendering a railroad crossing "extra hazardous" that the rule, they contend for, applies, but they say there was no evidence in the record that the embankment, Johnson grass, and other tall vegetation, west of Lynn Lane Road, which the evidence tended to show prevented motorists approaching the crossing, from the north, on said Road, from being able to see a train approaching the crossing from the west, were on the defendant Railroad Company's right-of-way. While we do not think this is an unequivocally accurate portrayal of the evidence (the Highway Patrolman testifying, on cross examination, that there was Johnson grass on the right-of-way) we have never understood that such obstructions to motorists' vision must be on the railroad's right-of-way in order for their existence to be taken into consideration in measuring the railroad's duty to warn of the approach of its trains; and defendants cite no authority, and we have found none, for any such requirement.

■ As far as we have been able to ascertain from the cases on the subject, it makes little, if any, difference, whether the conditions, which render the crossing dangerous, are due to objects on the railroad's right-of-way, or to the terrain, or to vegetation, or other obstructions, on other land. See the cases cited and discussed in the annotations beginning at 5 A.L.R.2d 112, § 5 (pp. 133ff) and 60 A.L.R. 1096, including Pratt, Read & Co., v. New York, N. H. & H. R. Co., 102 Conn. 735, 130 A. 102, 25 N.C.C.A. 79, in which the court said:

"* * * when the crossing is not the ordinary one, but is more than ordinarily dangerous by being much traveled, *or by having the view of the track obstructed by the railroad or by others,* or because of the noise making the ordinary signal difficult to hear, or by reason of a like cause, it becomes a question of fact for the jury to determine, what, if any, additional signals or precautions should have been maintained by the railroad in the exercise of its duty of using reasonable care." (Emphasis added).

In Pennsylvania R. Co. v. Matthews, 36 N.J.L. 531, the court said, among other things:

"If * * * (a railroad) chooses to build its track in such a mode as to unnecessarily make the use of a public road which it crosses greatly dangerous, I think such company, by its own action, must be held to have assumed the obligation of compensating the public for the increased danger, by the use of additional safeguards. * * *."

There was ample evidence in this case, including a traffic count, to show that the crossing involved was not an ordinary, "country", crossing, and from which the jury might well have concluded that it was dangerous enough to have warranted maintaining an automatic wig-wag, or flasher, type of electric sign, such as the Santa Fe had on Memorial Road in the vicinity of Edmond and Oklahoma City, in Atchison, Topeka & S. F. Ry. Co. v. Messmore, Okl., 339 P.2d 779, or automatic barriers, or some other more effective warning device, at this crossing, than the one, old, upright wooden cross-arm sign which the evidence showed was there.

The collision occurred between 11:00 and 11:50 A. M., on a clear July day. The day-time speed limit on Lynn Lane Road's two-lane, 20-foot width, was 65 miles per hour. Plaintiff introduced evidence contemplated to show that, at the time of the collision, the Chevrolet Sedan was traveling about 35 miles per hour. Other evidence tended to show that, because of the configuration of the terrain in the vicinity, and west, of the crossing, motorists approaching it on said road from the north could not see the train approaching it from the west, until they were as near as one, or two, car lengths away from the crossing; and that, if an auto was traveling at that rate of speed, it was impossible to brake it to a stop within that distance.

One of the members of the train crew admitted that the crossing was a dangerous

one, and there was ample evidence, both from the testimony of the crew, as to extra precautions they took when approaching it, and from the evidence as to its physical characteristics, that the crossing was extraordinarily hazardous. While there was testimony on behalf of the defendants tending to show that warning of the train's approach to the crossing was given both by the locomotive's horn, or whistle, and its bell, plaintiff introduced testimony of persons within earshot of the train, contemplated to show that no such warnings were given.

■ It is our considered opinion, after carefully examining the evidence as a whole, that, from it, all reasonable men could not have agreed that defendants had exercised such reasonable care and taken such precautions, as common prudence would have dictated, to warn the driver of the Chevrolet, in which plaintiff was riding, of the train's approach to the crossing. There was sound basis for such a difference of opinion, also as to whether, or not, defendants' negligence in failing to discharge such duty was the proximate cause of the collision. The trial court therefore committed no error in overruling defendants' motions for directed verdicts. In this connection notice the second paragraph of the syllabus in St. Louis-San Francisco Ry. Co. v. Prince, 145 Okl. 194, 291 P. 973, 71 A.L.R. 357.

■ Under their "PROPOSITION III", defendants contend that the trial court committed prejudicial error in allowing plaintiff's introduction into the evidence, of the old cross-arms part of the sign that stood southeast of the crossing, at the time of the collision, for the purpose of calling attention to the crossing's presence nearby. After Mr. Geren, father of the Chevrolet's deceased driver, had testified that he had found these cross-arms "laying on the side of the right-of-way", and the court had instructed the jury not to consider that testimony, but allowed their introduction, over defense counsel's objection that they were irrelevant, incompetent and immaterial as

evidence, the court then allowed Geren to further testify, without objection, that the cross-arms had been in his possession ever since. The charge of prejudice to defendants from this part of the trial proceedings is based upon the hypothesis that the jury was apprised, by indirection, or inference, that "following the accident the old cross-arms were discarded by the defendant (Railroad Company) and replaced with new ones."

If Jimmy Geren had been a newcomer, or stranger, in that area, and his ignorance of the presence of the crossing had been a crucial factor in plaintiff's cause of action, defendants' argument might be persuasive; but, from the evidence, there can be little doubt that he had often traveled the same route he was driving on the day of the collision and well knew of the crossing's location. From the evidence, it is reasonable to assume that he also knew that the defendant railroad company used this branch line crossing Lynn Lane Road infrequently —the evidence showing that the train with which the Chevrolet collided, was the only one that used it on a regular basis, and that it made only one round trip per day from Muskogee to Sand Springs. No contention is made that any present law requires motorists to stop at a track, like the subject one, before crossing it, in the absence of any knowledge, or warning, that a train is approaching on it. Nor is it suggested that a motorist, approaching such an unoccupied crossing, under such circumstances, would have any reason for believing that the crossing was not within his vehicle's "assured clear distance ahead." Therefore, as, in our opinion a material issue in the case was not Jimmy Geren's ignorance as to the location of the crossing, but was, instead, whether, or not, he should have foreseen that a train would be approaching it at such a point, and in such a manner, as to render it dangerous for his auto to be driven to the crossing in the way in which he was driving it, we find the likelihood of prejudice, in the complained of proceedings, insufficient to warrant reversal of the judgment.

Under defendants' "PROPOSITION II", they contend that the trial court erred in instructing the jury, by its instruction No. 14, that it was the Railroad Company's duty to maintain its crossings in a reasonably safe condition for the traveling public's use in a reasonably careful and prudent manner. In substance, they claim that plaintiff never alleged, nor introduced any evidence, that the crossing was in a state of disrepair or was defectively constructed; and they point out that its condition was not an issue in the case. They cite cases to the effect that the giving of inapplicable instructions constitutes error, but they make no effort to show that the giving of Instruction No. 14 was *prejudicial* error. Their brief merely contains the bare statement that its giving requires reversal.

We have repeatedly held that the giving of an inapplicable instruction is not necessarily prejudicial error, or cause for reversal. In St. Louis, San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341, we held:

"4. An erroneous instruction is not cause for reversal unless it is shown to have probably misguided the jury; otherwise it is harmless."

See also Hayward v. Ginn, Okl., 306 P.2d 320, and the discussion in Federer v. Davis, Okl., 434 P.2d 197, 199, 200, wherein we held:

"2. An instruction that is obviously inapplicable to the evidence introduced at a trial is error, but where, from examination of the record, it does not appear that same mislead, or confused, the jury, resulting in a verdict and judgment different from that which probably would have been rendered had the error not occurred, the giving of such instruction will be regarded as harmless."

Our views concerning the trial court's Instruction No. 14 are very similar to those expressed in the Withers case, supra, concerning the "Instruction No. 12" there involved. Therefore, on the basis of our careful examination of the record, and for the reasons indicated in the above quoted cases, we hold that the trial court's giving of its Instruction No. 14 was not prejudicial, or reversible, error in this case.

As we have found no valid ground for reversal in any of the alleged errors referred to in defendants' arguments, the judgment of the trial court is hereby affirmed.

All the Justices concur.