**FIRST NATIONAL BANK OF AMARILLO,**
a Texas Banking Corporation, Appellant,

v.

Robert L. LaJOIE, Appellee.

No. 47423.

Supreme Court of Oklahoma.

June 24, 1975.

**1208**

LaMar, Tryon, Sweet, Field & Petty by Larry L. Field, Guymon, for appellant.

Ogden, Ogden & Board, Guymon, Benefield, Shelton, Lee, Wilson & Tyree by Jim W. Lee, Charles L. Freede, Oklahoma City, for appellee.

BERRY, Justice:

This is appeal from trial court's judgment in replevin action.

First National Bank of Amarillo filed replevin action against Robert L. LaJoie [appellee]. It alleged right to possession of 1964 Chevrolet Corvette pursuant to terms of security agreement executed by appellee. While action was pending, bank acquired possession of Corvette and it was sold. Appellee filed answer and cross-petition alleging bank's security interest was void and requesting Corvette, or value thereof, be returned to him.

After hearing bank's evidence, trial court found bank's security interest in Corvette was void under 14A O.S.1971 § 2–407, and appellee was entitled to recover its value. The question of value was submitted to jury and it returned verdict for $3,000. Trial court entered judgment awarding appellee $3,000, plus costs and attorney fees. Bank appeals.

Subject to exceptions not herein applicable, § 2–407, supra, prohibits seller in consumer credit sale from taking security interest in property other than property sold. It provides in part:

"(1) With respect to a consumer credit sale, a seller may take a security interest in the property sold. * * * Except as provided with respect to cross-collateral (§ 2–408), a seller may not otherwise take a security interest in property of the buyer to secure the debt arising from a consumer credit sale.

\* \* \* \* \* \*

"(3). A security interest taken in violation of this section is void."

Bank's evidence indicates its security interest arose out of transaction which occurred on November 24, 1972, in Amarillo, Texas, wherein appellee purchased a 1973 Chevrolet Vega from Plains Chevrolet [Plains].

Plains and appellee executed instrument entitled "Motor Vehicle Retail Installment Sales Contract and Security Agreement." Bank's name is printed at top of agreement form. However, form designates Plains as Seller and appellee as Purchaser.

In agreement appellee agreed to pay 36 monthly payments of $132.29, and granted Plains security interest in the Vega and Corvette to secure payment. Payments were payable at bank.

The agreement contained provisions entitled "Non-Recourse Assignment" and "Repurchase Agreement." On November 29, 1972, Plains executed these provisions assigning its right in contract, and property described therein, to bank. In repurchase agreement Plains agreed to pay unpaid balance in event bank repossessed property and returned it to Plains.

Bank's evidence indicates it buys thousands of contracts from Plains each year.

When Plains' salesmen and customer agree upon credit sale, Plains' credit manager calls bank, and bank checks purchaser's credit. Bank then telephones and states whether bank will give credit and conditions thereof. Purpose of this is to ensure bank will buy contract after Plains executes it.

On this occasion bank imposed requirement that appellee have larger down-payment, additional collateral, or cosigner.

Plains' credit manager related this information to appellee, and appellee offered

Corvette as additional collateral. Parties then executed agreement and Plains sent papers to bank.

Appellee has never been in bank, all papers were prepared at Plains, and contract was signed by Plains and appellee. However, appellee knew contract would be financed at bank.

Bank subsequently repossessed the two automobiles and returned them to Plains. Plains paid bank pursuant to repurchase agreement.

Bank also introduced financing statements executed by appellee, as debtor, and bank as secured party. These financing statements recognized bank had security interest in Vega and Corvette.

After hearing bank's evidence, trial court found transaction between Plains and appellee constituted consumer credit sale as defined by 14A O.S.1971 § 2–104; that even though contract was executed in Texas, provisions of § 2–407, supra, were applicable and security interest in Corvette was void; that bank was assignee of Plains' rights; and bank did not have valid security interest in Corvette.

Section 2–407, supra, applies only to consumer credit sales as defined in § 2–104, supra. There is no similar prohibition applicable to consumer loans as defined in 14A O.S.1971 § 3–104.

Bank first contends trial court erred in finding transaction between bank and appellee was consumer credit sale rather than consumer loan.

14A O.S.1971 § 2–104(1) provides that, except as provided in subsection 2, consumer credit sale is sale of goods, services or interest in land in which (a) credit is granted by person who regularly engages as seller in credit transactions of same kind (b) buyer is person other than organization (c) the goods, services or interest in land are purchased primarily for personal, household or agricultural purpose (d) either debt is payable in installments or credit service charge is made and (e) with respect to sale of goods or ser-

vices, amount financed does not exceed $25,000.

Section 2–104(2)(a) provides unless sale is made subject to act by agreement, consumer credit sale does not include sale in which seller allows buyer to purchase goods or services pursuant to lender credit card or similar arrangement.

Bank admits transaction between appellee and Plains constituted consumer credit sale, and installment sales contract was assigned to it.

It argues after appellee selected car, Plains and appellee contacted bank requesting loan, that sale of Vega was complete at that time, and application for loan was second transaction. It contends it rejected application and only accepted it after additional security was offered, and contends this arrangement constituted loan between it and appellee.

If appellee had borrowed money from bank to purchase automobile, and then used proceeds of loan to purchase automobile in cash transaction, the transaction between bank and appellee would probably be held to be a loan. See Peoples Finance and Thrift Company of Ogden v. Perry, 30 Utah 2d 282, 516 P.2d 1400.

■ However, in present case appellee dealt only with Plains. He entered installment sales contract referring to him as Purchaser and Plains as Seller. He did not execute a note or any instrument of indebtedness with bank. Bank took assignment of Plains' rights under contract. After appellee defaulted, bank repossessed automobiles, returned them to Plains, and Plains repurchased sales contract from bank by paying bank amount of unpaid balance.

We conclude only inference which can be drawn from these facts is that there was no consumer loan transaction between appellee and bank. The transaction between Plains and appellee was consumer credit sale and bank was merely assignee of Plains' rights under sales contract.

Bank next contends court erred in ruling it was improper to take additional security in a consumer transaction.

Under this contention bank first argues transaction between it and appellee was consumer loan. Since we have previously determined there was no loan by bank to appellee, we need not consider this contention.

■ Bank further contends trial court erred in refusing to take judicial notice of Texas statutes relating to this transaction. This argument implies security interest was valid under Texas law.

14A O.S.1971 § 1–201(5) provides in part:

"(5) If a consumer credit sale * * * is made in another state to a person who is a resident of this State when the sale * * * is made * * * the following provisions apply as though the transaction occurred in this State:

"(b) a seller * * * or assignee of his rights, may not enforce rights against the buyer * * * with respect to the provisions of agreements which violate the provisions on Limitations on Agreements and Practices (Part 4) * * *"

Appellee was resident of this State at time sale was made. Seller's assignee brought replevin action to enforce its security interest in this State. The provision of security agreement granting seller security interest in Corvette violated § 2–407, supra, one of the provisions on Limitations on Agreements contained in Part 4 of Oklahoma Consumer Code. Section 1.201(5) of Uniform Consumer Credit Code is identical to § 1–201(5), supra. Comment 1 thereto states:

"* * * this section allows the enacting State to apply all of these protective provisions to its own consumer residents when enforcement actions are brought against them in the enacting state."

We conclude this contention is without merit.

■ Bank further cites 14A O.S.Supp. 1974 § 2–112, which authorizes seller in consumer credit sale of motor vehicle to secure debt arising from sale by security interest in other motor vehicle used for purpose of transporting persons or property, as well as motor vehicle which is subject of sale. We conclude that section is not applicable because it was not adopted until after trial of present case, and parties did not follow procedure set out therein.

■ Bank further argues § 2–407, supra, does not prevent assignee of seller from taking additional security from buyer. In support of this it refers to 14A O.S.1971 § 2–408, which provides in part:

"'Seller' in this section does not include an assignee not related to the original seller."

It then contends this definition of seller should be applied to § 2–407, supra, and § 2–407 should then be construed to permit assignee of consumer credit sales contract to take additional security.

If § 2–407, supra, were construed as bank contends, it would not aid bank in the present case. Here, Plains, as seller, took a security interest in the Vega and Corvette. Bank did not take a security interest in anything, but merely accepted an assignment of Plains' security interest.

Plains' security interest in the Corvette was void under § 2–407, supra. We find no authority which would allow this void security interest to become valid when assigned to bank.

5B Bender's Uniform Commercial Code Service § 92B.33, considers provisions of Uniform Consumer Credit Code which make certain agreements void, and states:

"Certainly any provision in the credit agreement which is unenforceable or void is equally so against either the original creditor or assignee."

Furthermore, in numerous cases, we have held assignee of conditional sales contract stands in shoes of his assignor, and defenses which vendee would have against as-

signor are available against assignee. Hudiburg Imported Cars, Inc. v. Hart, Okl., 383 P.2d 650; National Bank of Commerce of Tulsa v. A B C Const. Co., Okl., 442 P.2d 269.

We conclude the only reasonable inference which can be drawn from bank's evidence is that Plains' security interest in Corvette was void under § 2-407, supra; and that bank, as Plains' assignee, was not entitled to enforce it.

 In numerous cases we have held where plaintiff's evidence in replevin action affirmatively shows that defendant, and not plaintiff is entitled to possession of property involved, there is no issue of right of possession to be submitted to jury, and the cause may be submitted to jury only upon issue of damages claimed by the parties growing out of the wrongful taking of replevined property. Oliver v. Leslie, 207 Okl. 155, 248 P.2d 624; Pease v. Golightly, 168 Okl. 582, 35 P.2d 469. We conclude trial court properly limited jury's consideration to issue of damages.

Bank further contends trial court erred in denying motion for new trial due to excessive damages.

In support of this contention bank cites evidence Corvette had 90,000 miles on it when appellee purchased it; appellee only paid $2,000 for it; it was not in running condition when bank repossessed it; Plains subsequently sold it for $600-700; and appellee only sought $2,400 in original petition.

Bank introduced no evidence concerning Corvette's value. Its witnesses did testify that after bank took possession, Plains sold it wholesale for $600-700.

Appellee testified he paid $2,000 for Corvette, installed racing equipment on it, and invested $7,500 in it. It was in good condition and he could have fixed it for $125. In his opinion it was worth $4,000 on date bank took it.

Ronnie Cardin testified he is drag racer, is familiar with value of Corvettes in area, and was familiar with appellee's Corvette. In his opinion it was worth $3,500.

The amount of verdict was within permissible limits reflected by evidence. Where evidence is conflicting as to amount of damages suffered, it is for jury to determine amount thereof from all competent evidence before it, and if there is any evidence reasonably tending to support verdict, same will not be disturbed by this Court. Shell Pipe Line Corporation v. De Shazer, 195 Okl. 347, 157 P.2d 464.

Affirmed.

All Justices concur.