Linda Kay HAMES, Appellee,

v.

Boyd ANDERSON, Appellant.

No. 49496.

Supreme Court of Oklahoma.

Oct. 18, 1977.

Rehearing Denied Nov. 30, 1977.

David C. Hood, Oklahoma City, for appellee.

Edward H. Ferrish, Midwest City, for appellant.

LAVENDER, Vice Chief Justice:

Linda Kay Hames (Hames), appellee, brought suit for slander against Boyd Anderson (Anderson), appellant. Hames worked as a professional roller skating instructor at a rink operated by Anderson in Midwest City. On trial to a jury, Hames testified to Anderson orally accusing her of taking some $385 from a drawer at the rink. He terminated her relationship with his rink. Some of her skating pupils gave evidence of hearing Anderson make the ac-

cusation. The jury returned a verdict of $1,000 actual damages and $7,500 punitive damages. Defendant Anderson appeals.

Anderson argues (1) an incorrect jury instruction; (2) prejudicial reference to incompetent evidence at trial; and (3) insufficient evidence to sustain the damages given.

Instruction No. 6 is the jury instruction in question.[1] On the jury finding Anderson did slander Hames, this instruction required a judgment of not less than $100. As argued by Anderson, *Martin v. Griffin Television, Inc.,* Okl., 549 P.2d 85 (1976), does make that portion of the instruction incorrect. Here, however, the jury gave no minimum award based on presumed damages. Its verdict was for $1,000 as special or actual damages. An erroneous instruction is not cause for reversal, unless it is shown to have probably misguided the jury; otherwise it is harmless. *Missouri–Kansas–Texas Railroad Company v. Hayes,* Okl., 445 P.2d 249 (1968). The incorrect portion of instruction No. 6 by *Martin, supra,* could not have misguided this jury. The error was harmless.

Anderson finds no standard for awarding actual and punitive damages as required by *Martin, supra,* in the questioned instruction. We believe otherwise. That instruction allowed the jury to compensate Hames for "actual pecuniary damages" she suffered "as a direct result of the defama-

---

1. That instruction reads in part:
   "No. 6"
   "If you find that the defendant did slander the plaintiff as alleged in the petition, you must award the plaintiff a total judgment for not less than One Hundred Dollars ($100.00).
   "*If you find that the defendant did slander the plaintiff as alleged in the petition, you may award special damages to compensate the plaintiff for actual pecuniary damages suffered by the plaintiff as a direct result of the defamation up to One Thousand Dollars ($1,000.00).*
   \*   \*   \*   \*   \*   \*
   "*The Court instructs the jury that if they shall find for the plaintiff and award actual damages, and shall further find from the evidence that the acts and things done by the defendant were willfully and maliciously done,*

then, in addition to the actual damage sustained by her, they may assess against the defendant by way of punishment for such wrongful act exemplary or punitive damage in such sum as they may see proper, not to exceed the sum of Fifty Thousand Dollars ($50,000.00).* The word 'maliciously,' as used in the above instruction does not mean hatred, spite, or ill will as commonly understood, but means a wrongful act intentionally done without just cause or excuse, and by the word 'willful' is meant intentionally and not by accident or mistake.
   "The Court instructs the jury that by the use of the terms '*malice*' and '*malicious*' in these instructions is not meant spite or ill will, but *the intentional doing of a wrongful act without just cause or excuse.*" (Emphasis added.)

tion" in an amount of not more than $1,000. To award punitive damages under the instruction, the jury had to find "the acts and things done by the defendant were willfully and maliciously done," in addition to awarding actual damages. *Martin, supra,* was satisfied as to both actual and punitive damages.

■ Nor did Anderson object to the "now complained of" instruction. Rather, the record affirmatively shows Anderson's attorney refused comment or to raise an objection to the trial court's instruction in an *in camera* hearing prior to instructing the jury. No requested instructions are argued or found in the appeal record. Absent fundamental error, objection to the instructions was waived. *Wat Henry Pontiac v. Pitcock,* Okl., 301 P.2d 203 (1956).[2]

Anderson contends he was prejudiced and reversible error occurred when during trial reference was made to a polygraph test. In response to a question as to what Hames volunteered to do about the accusation, she replied, "I asked if I could take a polygraph test." On objection and the seeking of an admonition for the jury to disregard, the court stated: "What Mr. Ferrish is talking about is that polygraph is not admissible as evidence in the cause. Mr. Cox knows that."

Again, on rebuttal testimony and on his being asked the conclusion resulting from the investigation of his office, a sergeant of the Midwest City Police Department answered, "I called Mr. Anderson and informed him or called him to inform of the test results." The test was not further identified. The trial court refused Anderson's motion for a mistrial.

■ Here, there was no effort to introduce into evidence the results of any polygraph test. At most, the jury knew Hames had volunteered and taken such a test. The trial court had told the jury that "polygraph is not admissible as evidence." Even if the reference to the polygraph test was incompetent, it was not prejudicial. For reversal, there must be prejudice as well as the evidence being incompetent. *Security Mutual Life Ins. Co. v. Hollingsworth,* Okl., 459 P.2d 592, 600 (1969). If there was error by the reference to a polygraph test in the testimony at the trial in the present case, it was harmless error. Any reference to such tests in the presence of the jury in future trials is discouraged.

■ Anderson complains that the actual damages awarded by the jury were not sustained by sufficient evidence. Where evidence is conflicting as to amount of damages suffered, it is for the jury to determine amount thereof from all competent evidence before it, and if there is any evidence reasonably tending to support the verdict, same will not be disturbed by this Court. *First National Bank of Amarillo v. LaJoie,* Okl., 537 P.2d 1207, 1211 (1975).

■ Here, the jury returned a verdict for special damages of $1,000. Hames testified of losing skating pupils taking private lessons. She placed her loss as being $800 to $1,000. She was not connected with a skating rink as a professional from May 28, 1974, until September 1, 1974. Loss of private lessons reduced her income from May 28, 1974, through July 11, 1974, from $140 per week to $50 per week. She then started with four private lessons, and, at time of trial in February 1976, had worked up to around $100 per week. This testimony was in conflict with other testimony. It was for the jury to determine the amount. There was evidence reasonably tending to support the amount of the verdict.

■ In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon. *Wat Henry Pontiac, supra.* We do not disturb the verdict in this appeal.

AFFIRMED.

2.     "Syllabus by the Court.

"Where no fundamental error appears and no objections are made to the instructions as given and no requested instructions on the points complained of are presented to the trial court, any objections to the instructions as given are waived."

DAVISON, WILLIAMS, IRWIN and DOOLIN, JJ., concur.

BERRY, J., concurs in part and dissents in part.

HODGES, C. J., and BARNES and SIMMS, JJ., dissent.

HODGES, Chief Justice, dissenting.

I concur with the majority opinion with the exception of the portion dealing with the reference to appellee's willingness to take a polygraph test. I strongly feel that all the testimony concerning the polygraph test was inadmissible and highly prejudicial. The ultimate result of the questioning was to bolster the truthfulness and veracity of the appellee. The court's refusal to grant a mistrial was fundamental error.

It is well settled in Oklahoma[1] that in criminal cases the results of a lie detector test are not admissible and because results of such a test cannot be admitted against one as evidence of guilt or admitted on his behalf as proof of innocence, his willingness or unwillingness to take such a test ought not to be considered probative. Reception of evidence of willingness to take the test could not have added any real proof on the issues for the jury although it might have accentuated passion and prejudice against appellant.[2]

The Supreme Court of Michigan in *Stone v. Earp*, 331 Mich. 606, 50 N.W.2d 172, 174 (1951), said:

"In *People v. Becker*, 300 Mich. 562, 2 N.W.2d 503, 139 A.L.R. 1171 (1942) we held it was not error to refuse admission in evidence of the result of such tests for the reason that such tests used in ascertaining the truthfulness of a witness are still too much in the experimental field for courts to approve of their general use. We find no reason why a different rule should be followed in civil cases than in criminal cases."

The mention of the willingness or refusal to take a polygraph test is analogous to the mentioning of insurance in a negligence action. We have repeatedly held that the suggestion by plaintiff, plaintiff's counsel or any of plaintiff's witnesses that the defendant had insurance whether accomplished inadvertently or unintentionally is improper and prejudicial to defendant.[4].

The admission of evidence tending to establish that a person has been willing or unwilling to take a lie detector test is also improper and prejudicial.[5] I must, therefore, respectfully dissent.

I am authorized to state that BARNES and SIMMS, JJ., concur in the views herein expressed.

---

**1.** See *Henderson v. State,* 94 Okl.Cr. 45, 230 P.2d 495, 500 (1951).

**2.** See *Aetna Insurance Co. v. Barnett Bros., Inc.,* 289 F.2d 30, 34 (8th Cir. 1961) a civil case.

**4.** *Matchen v. McGahey,* 455 P.2d 52 (Okl.1969); *Million v. Rahhal,* 417 P.2d 298 (Okl.1966); *Lakeview, Inc. v. Davidson,* 166 Okl. 171, 26 P.2d 760 (1933).

**5.** Several jurisdictions permit introduction of polygraph results by stipulation of the parties. See Annot., "Admissibility of Lie Detector Test Taken Upon Stipulation That The Result Will Be Admissible in Evidence," 53 A.L.R.3d 1005 (1973). However, in *State v. Dorsey,* 88 N.M. 184, 539 P.2d 204 (1975) the New Mexico Supreme Court held that the results of polygraph examinations are admissible in evidence without stipulation if sufficient foundation has been laid to show that: the polygraph operator is an expert; the particular testing technique used is reliable and approved by authorities in the field; and the test results are valid for the particular subject tested. This decision overruled a series of decisions holding that polygraph results are generally not admissible. The New Mexico Rules of Evidence and the new Federal Rules of Evidence are essentially identical. See L. Romero, "The Admissibility of Scientific Evidence under The New Mexico and Federal Rules of Evidence," 6 N.M.L.Rev. 187, 188 (1976).