2002 OK CIV APP 87

**In the Matter of K.G., A.G. and M.G., Children under 18 years of age.**

**State of Oklahoma, Petitioner/Appellee,**

v.

**Mark Anthony Carter, III, Respondent/Appellant.**

**No. 96,930.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 23, 2002.

---

**27.** 21 O.S.2001, §§ 701.10, 701.11.

Richard Couch, Broken Arrow, OK, for Appellant.

Tim Harris, George P. Nelson, Tulsa, OK, for Appellee.

Don W. Fugate, Tulsa, OK, for M.G., a Minor Child.

**OPINION**

CARL B. JONES, Judge.

¶ 1 This proceeding to terminate the parental rights of Mark Anthony Carter, III, hereinafter Appellant as to M.G., was tried to a jury in an action alleging five grounds for termination. They were: (1) the Appellant's failure to pay child support as provided in 10 O.S. § 7006–1.1(A)(7); (2) the child, M.G., had remained in foster care for fifteen of the most recent twenty-two months as provided in 10 O.S. § 7006–1.1(A)(15); (3) the abandonment of M.G. by Appellant as provided in 10 O.S. § 7006–1.1(A)(2); (4) the incarceration of Appellant coupled with the fact that continuation of Appellant's parental rights would result in harm to M.G. as provided in 10 O.S. § 7006–1.1(A)(12); and, (5) the Appellant's history of drug and alcohol abuse and his resistance to treatment therefore, as provided in 10 O.S. § 7006–1.1(A)(14). All five of these grounds were submitted to a jury for resolution. The jury found against Appellant on all five grounds, and his parental rights to M.G. were terminated. Appellant appeals that decision in this court.

¶ 2 M.G. was initially found to be deprived on January 28, 1998, when the natural mother stipulated to a petition so alleging. An amended petition was later filed alleging four of the above listed five grounds to terminate Appellant's rights. That petition was dismissed without prejudice and about a month after that Appellant was released from incarceration (October, 1998). The termination petition was re-filed in December, 2000, and the cause was tried in September, 2001, resulting in the judgment appealed from here.

¶ 3 In November of 1999, a year and a month after his release, Appellant talked to a child welfare specialist, Ms. Pointer, by telephone. In December of that year, Appellant had his first, and only visit with M.G. Ms. Pointer testified that at that time her goal was to reunify the father and child. Appellant was arrested about a month later, was again convicted three months later, in or around March of 2000, and was in custody at the time of this trial for two five-year sentences for drug convictions. Additionally, Ms. Pointer testified M.G. has been in continuous foster care since October, 1997. She also testified that Appellant has never sent a birthday card or Christmas present, has made no telephone calls, and sent no letters to M.G. Indeed, aside from the one visit, Appellant has had no contact with the child save the one visit mentioned above. She testified that Appellant has paid no child support, and she has come to the conclusion that M.G. needs permanency and needs to get out of the "DHS system".

¶ 4 As succinctly summarized by M.G.'s brief, Mr. Carter, Appellant here, testified as follows: He has been in DOC custody three times, and was in custody when this action was first filed. M.G. has never lived with Appellant. Appellant has never sent birthday cards, and has seen the child only one time. Despite being out of prison during Christmas of 1998, he sent the child no gifts. After being out nearly a year, he was told by DHS in December of 1999 of steps he would have to take to regain custody of M.G., and within a month was found with PCP and marijuana in his possession and pleaded no contest therefor, and has been in DOC ever since that time. Despite writing letters to the judge during his incarceration, he did not attempt to communicate with the child.

Even though he was out of prison from October, 1998, to March, 2000, he paid no child support.

¶ 5 Appellant brings one proposition of error for review to this court: that the trial court committed error in permitting termination of Appellant's parental rights because Appellant was not provided with a copy of the treatment plan and a service plan approved by the court. In considering an appeal from a termination of parental rights determination, the reviewing court will affirm a judgment entered on jury verdict if there is any competent evidence reasonably tending to support the verdict. We stated in *In the Matter of A.D.W.*, 2000 OK CIV APP 110, ¶ 15, 12 P.3d 972, 976:

As a matter of clarity, we reiterate the standard of review that appellate courts should apply to deprived adjudications as well as terminations of parental rights. Although in termination cases the courts have adopted a traditional equity burden of proof, that is, clear and convincing evidence, on review, the amount of deference given by the appellate courts is the legal standard of review. Whether reviewing an adjudication of deprived or a termination of parental rights judgment, "where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon....". *Matter of T.R.W.*, 1985 OK 99, 722 P.2d 1197, 1200, citing *Hames v. Anderson*, 1977 OK 191, 571 P.2d 831.

¶ 6 The statute applicable to abandonment of the child in this cause is 10 O.S. Supp.1998 § 7006–1.1:

A. Pursuant to the provisions of the Oklahoma Children's Code, the finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations; provided, however, the paramount consideration in proceedings concerning termination of parental rights shall be the health, safety or welfare and best interests of the child:

1. Upon a written consent of a parent, including a parent who is a minor, acknowledged as provided in paragraph 4 of subsection B of Section 7503–2.1 of this act, who desires to terminate such parent's parental rights; provided that the court finds that such termination is in the best interests of the child;

2. A finding that a parent who is entitled to custody of the child has abandoned the child. For purposes of this paragraph the term "abandonment" includes, but is not limited to, the following:

\* \* \* \*

c. the parent fails to maintain a significant relationship with the child through visitation or communication for a period of six (6) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for termination of parental rights. Incidental or token visits or communications shall not be construed or considered in establishing whether a parent has maintained a significant relationship with the child;

. . .

¶ 7 The Appellant's sole proposition of error with which he attempts to vitiate the judgment of the trial court is the fact that he was never given a treatment or service plan. The simple answer to this allegation of error is that there is no requirement in the statute in play in this action to do so. The applicable provision is 10 O.S. Supp.2000 § 7006–1.1. 2. c. Within this provision is no requirement for a service plan. The statute's provisions are so constructed that there is no place for a service plan. The provision says "a finding that a parent who is entitled to the custody of the child has abandoned the child." This language presupposes that the abandonment has taken place by the time the cause comes to the attention of the court, and a prospective service plan, entered when the matter came to the attention of the judicial officer, would have no bearing on whether or not the child *had been* abandoned, as required by the statute at the time of the hearing. A service plan plays no part in the statutory termination of parental rights for abandonment

procedure. In support of his allegation of error Appellant cites two cases, which are found by this court not to validate the proposition of error. The first case is, *In the Matter of C. T.*, 1999 OK CIV APP 55, 983 P.2d 523. It is cited for the proposition that the focus in adjudication proceedings is on the status of the child and not the status of the parent; a child is either deprived or not deprived. Then the provisions of 10 O.S. § 7003–5.3L are relied upon to show that the parents shall each be provided a treatment plan. The last cited statute, § 7003–5.3 is entitled "Individual treatment and service plan." As we have already stated in this opinion, a treatment plan is not a requirement of the abandonment procedure. The fact that where a treatment plan is called for, it is to be given to both parents. It is not material in this proceeding. The second and last case cited by Appellant is, *In the Matter of Christopher H.*, 1978 OK 50, 577 P.2d 1292. Here the Appellant notes that the case states that termination is not justified where an agent (of the state), entrusted with the duty to help salvage the family relationship, contributes to the condition. The case puts forth that statement, but that has no bearing on whether or not a service plan was required. If, as this court finds, no plan need be given in a termination case such as this, failure of an agent of the State to give such a paper to the Appellant cannot have legally contributed to the situation causing the termination.

¶ 8 Having reviewed the Appellant's brief, this Court finds no cause to reverse the judgment of the trial court, and that judgment is hereby affirmed.

¶ 9 AFFIRMED.

JOPLIN, V.C.J., and BUETTNER, J., concur.