## Commonwealth v. O'Dooley

*William F. Morgan,* for Commonwealth.

*Joseph A. Massa, Jr.,* of *Bonavita & Massa,* for defendant.

WOLFE, P. J., December 1, 1971.—For decision is defendant's motion for polygraph and truth serum testing of himself.

Defendant has been indicted on three counts of murder of his wife and two infant children and one count of arson.

It is now settled that the results of such testing are not only inadmissible as evidence at trial but the willingness or refusal to submit to such testing is likewise inadmissible: Commonwealth v. Saunders, 386 Pa. 149 (1956); Commonwealth ex rel. Hunter v. Banmiller, 194 Pa. Superior Ct. 448 (1961). The reasoning behind these holdings is found in United States v. Stromburg, 179 F. Supp. 278 (1959), simply that a machine cannot be examined or crossexamined and its "testimony" as interpreted by an expert is, in that sense, the most glaring blatant hearsay. Aetna Insurance Company v. Barnett Brothers, Inc., 289 F.2d 30 (1961).

Defendant raises a unique question, however, in that he does not contend the testing is desired for the purpose of placing the results thereof or his willingness to take the test into evidence but rather so defense counsel can adequately prepare himself in his client's defense. No cases have been found on this exact point nor have any been presented to the court.

Defendant's counsel argues the willingness of defendant to take a polygraph and truth serum test is indicia either of defendant's innocence or a state of mind whereby he has concealed commission of a criminal act in the recesses of his mind and, therefore, cannot fully cooperate with counsel in the dis-

closure of all facts of the case. Coupled with this position is the additional argument that if defendant were not indigent, his counsel would have the benefit of the results of such testing, but since public funds must be sought in his case, he is at a distinct disadvantage.

It is difficult to follow this reasoning. Arguendo, if such tests indicate guilt, counsel is in a better position to enter a plea or press for plea negotiations and, if innocence is indicated, to advise defendant to stand trial.

Notwithstanding the monetary issue, we think this argument compels the same answer for excluding the results of such tests as well as the willingness to take them. In essence, defendant is placing his fate in the mechanism of a machine and the fluid of the truth serum.

It is the unshifting duty of the Commonwealth to prove defendant's guilt beyond a reasonable doubt. Defendant need not take the stand and testify against himself, nor can any adverse inference be drawn for his failure to do so. He has a right to crossexamine all witnesses for the Commonwealth and is presumed to be innocent throughout the course of the trial.

Whatever the results of these tests, they certainly can be of no objective help to defendant or anything he can rely upon with any degree of certitude. If the results indicate innocence, his competence may be bolstered but what if the results are negative? Will the defendant then plead? More important and going to the pith of the matter, should the court accept this machine reasoning to permit a plea? We think not. The guilt or innocence of defendant is for man to reason on all of the evidence of the case, not what a machine or truth serum may persuade defendant to do based upon what is put into the machine in the

line of interrogation by the examiner or one asking questions while defendant is under the influence of a serum. To permit this is to invade the prerogative of the jury and the court.

Counsel has given the court no clue or reason that would lead him to believe defendant is harboring a repressed guilty mind. On the contrary, from the point of preliminary arraignment and hearing through an examination by a court-appointed sanity commission interspersed with motions for discovery and inspection as well as court approval to permit defendant to hire, at public expense, an arson expert, defendant has maintained his innocence. The fact that a "well-to-do" defendant could hire an independent testing cannot be the criteria to permit public funds to be used to test indigent defendants. In the court's opinion, there must be some evidence or foundation laid that would conclude such a testing is necessary, not merely that it would be desirable.

Counsel acknowledges these drugs (sodium amytal and pentothal) do not produce a state of mind to induce one to speak the truth but rather permits "a person to speak more freely than he otherwise might and to unburden his mind of its pent-up emotions." Accepting this conclusion, it supports the denial of granting defendant's motion.

In other jurisdictions that prohibit the admission of the results of the test do so on the basis that there is no general scientific acceptance as to their reliability and the function of the jury is usurped particularly as to the element of credibility of witnesses: State v. Walker, 37 N.J. 208, 181 A. 2d 1 (1962) 3 Wigmore on Evidence, sec. 999.

Our own court in Commonwealth v. Saunders, supra, a murder case, at page 157, stated:

"Defendant's offer was merely a self-serving act

or declaration which obviously could be made without any possible risk, since, if the offer was accepted and the test given, the result, whether favorable or unfavorable to the accused, could not be given in evidence."

For these reasons, we hold the motion must be denied and make the following order:

And now, December 1, 1971, defendant's motion for a polygraph and truth serum testing of himself is denied. Exceptions noted.