888 F.2d 588
 58 USLW 2303, 29 Fed. R. Evid. Serv. 87
 Rudolph W. UNDERWOOD, Appellant,
v.
COLONIAL PENN INS. COMPANY, Appellee.
Prudential Property and Casualty Insurance Company,
Intervenors Below.
Rudolph W. UNDERWOOD, Appellee,
v.
COLONIAL PENN INS. COMPANY, Prudential Property and Casualty
Insurance Company, Appellants.
 Nos. 88-2802, 88-2858.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1989.
Decided Nov. 6, 1989.
Rehearing and Rehearing En Banc Denied Jan. 8, 1990.
 
 Jim Lyons, Jonesboro, Ark., for Underwood.
 John E. Moore and Patrick J. Goss, Little Rock, Ark., for Colonial Penn Ins. Co.
 Before GIBSON and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Rudolph W. Underwood appeals from the district court's[1] order entered upon a jury verdict in favor of Colonial Penn Insurance Company (Colonial), in Underwood's breach of contract action to recover insurance proceeds. On April 16, 1986, Underwood took out a homeowners insurance policy with Colonial. On June 12, 1986, his home was totally destroyed by fire. Underwood brought this diversity action to recover for Colonial's refusal to pay his fire loss claim and its bad faith in handling the claim. We affirm.
 
 
 2
 On June 2, 1986, Underwood received a notice of cancellation (effective June 23, 1986) on his policy from Colonial. In response, Underwood took out another homeowners policy with Prudential Property and Casualty Insurance Company on June 8, 1986, in the amount of $185,000. Prudential paid Underwood over $185,000 as a result of the June 12, 1986 house fire.[2]
 
 
 3
 The evidence adduced at trial established that Underwood made numerous other insurance claims in the past. A check for $50,000 was deposited into his business account in 1985 after a houseboat caught fire. Additionally, Underwood had a renters insurance policy with American General Insurance Company on the house which is the subject of the instant case. On May 13, 1986, he reported a theft of electronic equipment from this house to American General and to the police. Deputy Sheriff Art Rogers of the Greene County Sheriff's Department visited Underwood on June 12, 1986, to investigate the theft report. The house burned down several hours later.
 
 
 4
 Underwood testified that on June 12, 1986, before the fire, he told Deputy Rogers he would cooperate in the theft investigation. On cross-examination, defense counsel inquired about this conversation and sought to introduce evidence that Underwood refused to take a polygraph test in connection with the investigation. After a series of objections and bench conferences, the district court ruled that defense counsel was not to mention Underwood's refusal to take the polygraph test until the court had an opportunity to research Arkansas law on the admission of polygraphs. In spite of the court's admonishment, defense counsel asked Underwood if he had responded to Rogers' solicitation for help with, "Fuck you. No I won't take no polygraph? I won't take this shit. Fuck the insurance company." Underwood immediately moved for a mistrial.
 
 
 5
 The district court denied Underwood's motion and allowed the evidence of Underwood's refusal to submit to a polygraph test. In the next portion of the cross-examination, Underwood denied making the statements, testifying "It would be absolutely ridiculous for a person to turn in a claim and say that to an investigating officer ... and I would not have cursed a deputy sheriff or cursed an insurance company."
 
 
 6
 The court found that Arkansas law prohibits admission of polygraph results only in criminal cases. See Ark.Code Ann. Sec. 17-32-105 (1987). Defense counsel had offered the polygraph reference for impeachment purposes. The court reasoned that the polygraph evidence was admissible for several reasons: (1) under Federal Rule of Evidence 404(b) as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake; (2) for impeachment; (3) the polygraph reference was inadvertently injected; and (4) the probative value outweighed any prejudicial effect. On its own motion, the court gave a cautionary instruction that the evidence of claims which Underwood had submitted to insurance companies other than Colonial, was to be considered only to show motive, opportunity, or knowledge, and not to show character or that Underwood acted in conformity therewith.
 
 
 7
 Portions of Deputy Rogers' video deposition concerning his conversation with Underwood were also admitted into evidence. In his deposition, Rogers testified that he had written down Underwood's responses, and proceeded to read the responses from his reports or notes. Underwood's objection to this testimony as prejudicial and collateral was overruled.
 
 
 8
 The jury returned a verdict for Colonial. Underwood's subsequent motion for a new trial was denied. On appeal, Underwood challenges the district court's failure to grant a mistrial or a new trial after allowing defense counsel to mention Underwood's refusal to take a polygraph exam.
 
 
 9
 A trial court enjoys wide discretion in ruling on a motion for a mistrial, and will not be reversed absent a manifest abuse of that discretion. See Jim Halsey Co. v. Bonar, 284 Ark. 461, 471, 683 S.W.2d 898, 905 (1985). "A mistrial is a drastic remedy and ought not to be resorted to unless there has been an error so prejudicial that justice could not be served by continuing in the trial and there is no other method by which the prejudice can be removed." Arkansas Louisiana Gas Co. v. James, 15 Ark.App. 184, 692 S.W.2d 761, 768 (1985). "The denial of a motion for a new trial is within the sound discretion of the trial court, and its ruling will be reversed only upon a showing that the court abused its discretion." Ryko Mfg. Co. v. Eden Servs., 823 F.2d 1215, 1221-22 (8th Cir.1987), cert. denied, 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 763 (1988). With specific regard to the admissibility of polygraph evidence, we note that the admission or exclusion of such evidence is also left to the sound discretion of the district court. See Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591, 604 (7th Cir.1985).
 
 
 10
 This court has excluded evidence of a person's unwillingness to take a polygraph examination. See Aetna Ins. Co. v. Barnett Bros., Inc., 289 F.2d 30, 34 (8th Cir.1961). In Aetna, a warehouse containing an insured's stock of furniture was lost by fire. Aetna claimed arson. At trial, Aetna made an offer of proof that after the fire, one of the insured's employees who witnessed the fire had agreed to take a lie detector test but had later refused to do so. The district court ruled that no reference could be made to the polygraph. This court affirmed, finding that reception of the polygraph evidence "could not have added any real proof on the issues for the jury." Id. at 34.
 
 
 11
 We are aware that "[d]istrict judges generally exercise their discretion in this area in favor of excluding polygraph evidence." United States v. Dietrich, 854 F.2d 1056, 1059 (7th Cir.1988). See also DeVries v. St. Paul Fire & Marine Ins. Co., 716 F.2d 939, 945 n. 8 (1st Cir.1983). In the present case, however, the polygraph reference was not offered as substantive evidence. The district court admitted the evidence under Federal Rule of Evidence 404(b) to show motive, plan, scheme, design, etc. The jury could have reasonably inferred from the conversation that Deputy Rogers suspected the allegedly stolen items were still present in the house, and that the Deputy's investigation was a motive for the ensuing fire, i.e., that the fire was not coincidental. In contrast, the polygraph evidence in Aetna, supra, could not have shown motive under Rule 404(b) because the witness's refusal to submit to a polygraph test occurred after the fire. Aetna is distinguishable from the facts of this case.
 
 
 12
 Second, we find as did the district court, that the evidence was admissible on cross-examination for impeachment of Underwood's credibility. Underwood testified that he told Deputy Rogers he would cooperate and that he had no reason not to cooperate. Colonial asserts that the evidence that Underwood refused to take a polygraph test was admissible under Federal Rules of Evidence 613 or 801(d)(2), to impeach Underwood with a prior inconsistent statement. We hold that the evidence was also admissible for the purpose of impeaching Underwood's credibility by contradiction. See, e.g., Simmons, Inc. v. Pinkerton's, Inc., supra, 762 F.2d at 604 (allowing evidence of witness's lie about taking and passing polygraph exam regarding circumstances of fire, to impeach under Rule 608(b) where witness had in fact not taken polygraph exam). Furthermore, it is our view that this evidence was more probative of untruthfulness than unfairly prejudicial. See Fed.R.Evid. 403. The jury was entitled to infer that all or part of Underwood's testimony was incorrect.
 
 
 13
 We do not, however, believe that the polygraph reference was "inadvertent." Defense counsel had been repeatedly warned to "avoid the polygraph," and we do not condone his actions. In our view, defense counsel deliberately violated the court's instruction and should have been more harshly dealt with by the district court. We note, however, that the district court subsequently admonished the jury, thereby removing any potential prejudice of error. See Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954) ("Our theory of trial relies upon the ability of a jury to follow instructions.").
 
 
 14
 Similarly, Deputy Rogers' deposition testimony about the conversation in which Underwood refused to take a polygraph exam was relevant to the issues of intent and motive, and admissible under Rule 404(b). Underwood had been given the opportunity to explain or rebut these statements. Underwood failed to renew his motion for a mistrial on this point, and declined the district court's offer to give a curative instruction.
 
 
 15
 In sum, we determine that the polygraph reference was admissible to show motive and to impeach. We must stress here that our holding of polygraph admissibility is limited to the narrow factual pattern presented to us. Hence we conclude that the district court acted within its discretion in admitting the evidence, and in refusing to grant a mistrial or a new trial on this ground.
 
 
 16
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Prudential intervened below and now appeals to preserve its right to intervene should Underwood prevail herein