# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2879

_____

United Fire and Casualty Company,     *
                                                *

         Appellant,            *

                                            *

       v.                       *

                                            *

Historic Preservation Trust, doing     *
business as Sedalia Trust Inn,            *

                                            *

         Appellee.            *

_____

No. 00-2990

_____

Appeals from the United States
District Court for the
Western District of Missouri.

United Fire and Casualty Company,     *

                                            *

         Appellee,            *

                                            *

       v.                       *

                                            *

Historic Preservation Trust, doing     *
business as Sedalia Trust Inn;          *
Yuri A. Ives, Trustee,               *

                                            *

         Appellants.        *

_____

Submitted: May 18, 2001

Filed: September 12, 2001
_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and BARNES,[1]
    District Judge.
_____

WOLLMAN, Chief Judge.

United Fire & Casualty Company (United Fire) appeals from the judgment entered by the district court[2] following a jury verdict in favor of the Historic Preservation Trust (the Trust). We affirm.

## I. BACKGROUND

Yuri A. Ives formed the Trust in November 1996 and served as the entity's sole trustee. In March of 1997, Ives, on behalf of the trust, purchased a building in Sedalia, Missouri, with the intention of converting it into a historic hotel. Although renovations were ongoing, the property opened as the Sedalia Trust Inn (the Inn) and began operations in June 1997. The following month, United Fire issued the Trust a policy insuring the Inn and its contents.

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

-2-

Thereafter, the Inn was damaged by two fires. The first occurred on September 4, 1997, when fumes from the lacquer that Ives was applying to a hardwood floor ignited. After an investigation, the Sedalia Fire Department determined that the fire had been accidental. In the early morning hours of September 7, 1997, a second fire caused extensive damage to the Inn. The cause of this fire was determined to be arson.

Ives, acting on behalf of the Trust, submitted to United Fire a claim for the damage to the building and its contents and a claim for business interruption loss in the amount of $71,420.48. After conducting an investigation, United Fire denied the claim on June 15, 1998. On June 16, 1998, United Fire filed the present action in federal district court, seeking a declaration that its policy did not cover damages to the Inn and alleging that Ives had intentionally set the fires, that he made material misrepresentations and concealed material facts, that he failed to protect the property, and that he failed to cooperate with the insurer as required by the terms of the policy. The Trust counterclaimed, seeking a judgment that the policy covered the fire damage to the Inn, as well as business interruption losses. The Trust also alleged breach of contract, vexatious refusal to pay, and defamation.

The district court granted United Fire's motion for summary judgment on the Trust's defamation claim. The remaining claims were tried in February of 2000. The jury awarded the Trust $85,407.00 in damages and interest related to the first fire, and $2,077,630.00, including $650,000 in attorney fees on the vexatious refusal counterclaim, related to the second fire. On United Fire's motion, the district court reduced the jury verdict by $137,539.39. Following the entry of judgment, the district court denied United Fire's renewed motion for judgment as a matter of law and for a new trial.

# II. DISCUSSION

## A. Standard of Review

We review the district court's evidentiary rulings for a clear and prejudicial abuse of discretion. Loehr v. Walton, 242 F.3d 834, 836 (8th Cir. 2001); Qualley v. Clo-Tex Intern., Inc., 212 F.3d 1123, 1127 (8th Cir. 2000). We review the district court's denial of a motion for judgment as a matter of law de novo, applying the same standard as did the district court. Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000). In doing so, we analyze the evidence in the light most favorable to the prevailing party, we do not engage in a weighing or evaluation of the evidence, and we do not consider questions of credibility. Id. We review the district court's instructions to the jury for abuse of discretion. Grain Land Coop. v. Kar Kim Farms, Inc., 199 F.3d 983, 995 (8th Cir. 1999). Although our task is to determine whether the instructions fairly and adequately submitted the issues to the jury, id., we afford the district court "broad discretion in choosing the form and language of the jury instructions." Fed. Enter., Inc. v. Greyhound Leasing & Fin. Group, 786 F.2d 817, 820 (8th Cir. 1986).

## B. Claims of Error

### 1. Transcript and Videotape Evidence

Pursuant to the terms of the insurance policy and at United Fire's request, Ives submitted to an extensive examination under oath over the course of five days in January and March of 1998. The entire examination was transcribed and, over Ives's initial objection, the final three days of the examination were videotaped.

On the second day of trial, United Fire attempted to offer both the transcript and the videotape, in their entirety, into evidence as admissions by a party opponent.

Observing that "both exhibits were quite lengthy," and that live trial testimony was preferable to recorded testimony, the district court ruled that the transcript and the videotape were not admissible. The court informed counsel that it would allow the introduction of portions of Ives's prior testimony under oath for impeachment purposes and that the testimony would be considered to be substantive evidence.

United Fire contends that the district court committed reversible error when it refused to admit the transcript and the videotape into evidence. Citing McIntosh v. Eagle Fire Co. of New York, 325 F.2d 99, 100 (8th Cir. 1963), it argues that the evidence was admissible as an admission by a party. It further contends that the evidence, particularly the videotape, should have been admitted as evidence of Ives's "demeanor and attitude" during United Fire's investigation of his claim.

Although we stated in McIntosh that "[s]worn statements are clearly admissible as an admission of a party against interest," id., we did not hold that a district court is obligated to admit evidence of an examination under oath in its entirety.[3] To the contrary, only "portions of sworn question and answer statements" were offered and admitted. Id. Here, the district court offered United Fire the opportunity to introduce appropriate portions of the examination under oath as impeachment and as substantive evidence, but United Fire declined to do so.

The district court also expressed concerns about "time and repetition" and about certain potentially inflammatory and unfairly prejudicial statements that were made during the course of the examination. The transcript of the examination was more than six hundred pages in length, and the videotape covered more than two days of testimony. District courts have broad discretion to place reasonable limits on the

---

[3]Counsel for United Fire appears to have conceded as much at a pre-trial conference, stating that "I don't have any authority that says that it's reversible error not to admit the [transcript of the examination] itself."

presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence. First Nat'l Bank and Trust Co. v. Hollingsworth, 931 F.2d 1295, 1304 (8th Cir. 1991). Likewise, district courts have broad authority under Federal Rule of Evidence 403 to exclude probative but unfairly prejudicial evidence. Cummings v. Malone, 995 F.2d 817, 823 (8th Cir. 1993).

We note that United Fire first clearly articulated its intent to offer the videotapes as evidence of Ives's demeanor in its post-verdict motion for a new trial. Although counsel for United Fire made limited references to Ives's demeanor during a pre-trial conference, in our view those comments were insufficient to alert the district court that the videotapes were being offered primarily as demeanor evidence. Furthermore, on appeal United Fire concedes that it made no offer of proof during trial that the evidence was intended to establish demeanor or attitude. We thus agree with the district court's conclusion that because "United Fire did not give the Court the opportunity to consider this [issue] during trial, a new trial is not warranted." See also Badami v. Flood, 214 F.3d 994, 998 (8th Cir. 2000); Fed. R. Evid. 103(a) ("[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked").

Accordingly, we conclude that the district court did not abuse its discretion by refusing to admit the transcript and the videotapes in their entirety.

## 2. Polygraph Issue

United Fire next argues that the district court committed reversible error by excluding evidence that Ives had refused to take a lie detector test, as requested by the Missouri state fire marshal. United Fire argues that because it was aware of Ives's refusal to take the polygraph test when it denied the Trust's insurance claim, evidence of that refusal is relevant to the reasonableness of its actions and therefore admissible

on the issue of vexatious refusal to pay. It cites our holding in <u>Underwood v. Colonial Penn Ins. Co.</u>, 888 F.2d 588, 589-91 (8th Cir. 1989), in which we upheld the admissibility of evidence of refusal to take a polygraph for purposes of impeachment and as proof of motive. Further, United Fire contends that because under Missouri law evidence that is generally inadmissible may be admitted to demonstrate reasonableness when vexatious refusal to pay is at issue, <u>see</u> <u>Goodman v. State Farm Ins. Co.</u>, 710 S.W.2d 423, 424 (Mo. Ct. App. 1986), <u>Scott v. Mo. Ins. Co.</u>, 233 S.W.2d 660, 665 (Mo. 1950) (en banc) (hearsay admissible where relevant on the issue of reasonableness of an insurer's actions), Ives's refusal to submit to a polygraph examination is admissible here. In short, United Fire contends that the Trust "opened the door" to the admission of the polygraph evidence by filing the vexatious refusal counterclaim.

Evidence that an insured refused to take a lie detector test is generally inadmissible because it has little probative value and may be highly prejudicial to an insured. <u>Aetna Ins. Co. v. Barnett Bros., Inc.</u>, 289 F.2d 30, 34 (8th Cir. 1961). Accordingly, we cannot say that the district court abused its discretion by concluding that the probative value of Ives's refusal to take the exam was "substantially outweighed" by the danger of unfair prejudice. We reach the same conclusion even assuming, <u>arguendo</u>, that Missouri law applies a lower evidentiary standard on vexatious refusal to pay claims.

Our holding in <u>Underwood</u> is distinguishable. There, we affirmed the district court's admission of polygraph evidence for purposes of impeachment and to establish motive under Federal Rule of Evidence 404(b). <u>Underwood</u>, 888 F.2d at 590. Here, on the contrary, United Fire sought to introduce Ives's refusal to submit to the examination as substantive evidence. Moreover, the holding in <u>Underwood</u> was explicitly limited "to the narrow factual pattern" presented in that case. <u>Id.</u> at 591.

We therefore conclude that the district court did not abuse its discretion by excluding evidence that Ives refused to submit to a polygraph examination.

### 3.  Vexatious Refusal

The jury awarded $650,000 in attorney fees on the Trust's vexatious refusal to pay counterclaim.  United Fire contends that because there was insufficient evidence to support the jury's verdict, the district court erred in denying its motion for judgment as a matter of law on that claim.

Missouri law provides that an insured may recover penalties and attorney fees when an insurer denies a claim without reasonable cause or excuse.

> In any action against any insurance company to recover the amount of any loss under a policy of . . . fire . . . insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

Mo. Rev. Stat. § 375.420 (2000).  Missouri law further provides that "[t]o support the imposition of the penalty under the statute, [the insured] must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." DeWitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. 1984) (en banc).  Where there is an open question of law or fact, an insurer is ordinarily entitled to insist on a judicial resolution without being penalized for vexatiousness. Oliver v. Cameron Mut. Ins. Co., 866 S.W.2d 865, 870 (Mo. Ct. App. 1993).  "The existence of either a factual or legal litigable issue,

however, does not preclude a vexatious penalty where there is evidence that the insurer's attitude was vexatious and recalcitrant." DeWitt, 667 S.W.2d at 710.

We agree with the district court's conclusion that the Trust presented sufficient evidence that United Fire's attitude throughout the investigation of its claim was vexatious and recalcitrant. In its post-judgment memorandum and order, the district court pointed out that United Fire's claims supervisor admitted that she had no evidence linking Ives to the fire and that she knew that the state fire marshal and the Sedalia Fire Department had found no evidence that Ives had set the fires, and that United Fire had failed to investigate all means of entry into the building.

### 4. Lost Business Income

The district court instructed the jury that if it concluded that United Fire's policy covered the damage to the Inn, it should also award damages for any lost business income that the Trust suffered. United Fire argues that there was insufficient evidence to support a finding of lost business income and that the district court should therefore have granted its motion for judgment as a matter of law on the issue. Specifically, United Fires argues that the Trust's business interruption counterclaim was too speculative because the Inn had been in operation for only some three months before the fires; because Ives had never before prepared a business interruption claim and did not consult with a financial expert before doing so; and because Ives admitted that he did not know if the lost income figure that he had calculated was correct. United Fire also points to the testimony of its financial expert that the Trust suffered no business interruption loss whatsoever.

As a general matter, anticipated profits of a commercial business are too remote and speculative to warrant recovery under Missouri law. Coonis v. Rogers, 429 S.W.2d 709, 713-14 (Mo. 1968). Anticipated profits may be recovered, however, when estimates of lost profits "are made reasonably certain by proof of actual facts,

with present data for a rational estimate of their amount." Id. In order to recover lost profits, a party must produce proof of business income and expenses during a period of time prior to the interruption of business. Indep. Bus. Forms, Inc. v. A-M Graphics, Inc., 127 F.3d 698, 703 (8th Cir. 1997). With proper proof, even a new business can recover for lost anticipated profits. Id.

As the district court observed, the standard for obtaining lost business profits is based on the general Missouri rule for establishing damages. Under Missouri law, although the existence of damages must be demonstrated with some certainty, the specific amount of damages need not be proven with similar precision. Gasser v. John Knox Village, 761 S.W.2d 728, 731 (Mo. Ct. App. 1988). "A party attempting to prove damages need only place before the jury the relevant facts tending to show the extent of damages, enabling the jury to make an intelligent estimate of [damages] as circumstances of the case admit." C.L. Maddox, Inc. v. Benham Group, Inc., 88 F.3d 592, 601 (8th Cir. 1996) (quotation marks and citation omitted). Furthermore, in certain circumstances, where "the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred," but damages defy exact proof, "it is reasonable to require a lesser degree of certainty as to the extent of the loss, leaving a greater degree of discretion to the court or jury." Gasser, 761 S.W.2d at 731 (citation omitted).

Here, the Trust's claim for lost business profits was based primarily on Ives's estimate that the Inn would have earned $71,420.48. Given the particular circumstances of this case, this evidence was sufficient to submit the issue to the jury. As the district court noted, Ives fully explained to the jury how he had calculated the Inn's lost profits. The jury was also presented with testimony by United Fire's expert witness, who indicated that the Trust was due no compensation for lost business income. Both Ives and the expert were extensively cross-examined about their assumptions and calculations. This evidence was sufficient to enable the jury to make an intelligent estimate of business interruption damages without resorting to mere

speculation. The court did not err, therefore, in denying United Fire's motion for judgment as a matter of law on the lost business profits claim.

### 5. Jury Instruction on Material Exaggeration

The district court's refused to give United Fire's proposed jury instructions on the issue of material exaggeration. Citing <u>Vitale v. Aetna Cas. & Sur. Co.</u>, 814 F.2d 1242, 1247 (8th Cir. 1987), United Fire argues that an insured's exaggeration of the amount of business interruption loss can constitute a material breach that voids a policy and that there was evidence that Ives had materially exaggerated his business income losses.

We disagree. The district court properly determined that the evidence was insufficient to submit the issue of misrepresentation to the jury because, under Missouri law, misrepresentation requires an intent to deceive. <u>Gould v. MFA Mut. Ins. Co.</u>, 331 S.W.2d 663, 669 (Mo. Ct. App. 1960). As the district court noted, there was no evidence from which a reasonable jury could infer that Ives was intending to deceive United Fire when he submitted his estimate of business loss. To the contrary, Ives admitted that he had never before calculated lost business profits, and the record suggests that he was entirely open about the assumptions and calculations that he made. Likewise, because United Fire's proposed instructions did not include the element of intent to deceive, the district court did not err in rejecting them.

### 6. Jury Instruction 23

United Fire contends that the district court erred in instructing the jury on the issue of the Trust's alleged misrepresentation. Jury instruction 23 stated:

> Your verdict must be for United Fire & Casualty Company on Historic Preservation Trust's claim for insurance benefits and interest as a result of the fire of September 7, 1997, if you believe:
>
> *First*, that Yuri Ives represented [at least one of several assertions]; and
>
> *Second*, that any one or more of the representations in paragraph First were false; and
>
> *Third*, Yuri Ives knew that it was false or did not know whether it was true or false; and
>
> *Fourth*, the representation was material; and
>
> *Fifth*, Yuri Ives intended to deceive United Fire and Casualty Company.

United Fire argues that the language of the instruction should have closely tracked the terms of the policy, which provided, in relevant part:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1. This Coverage Part;
> 2. This Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

In short, United Fire argues that there is a material distinction between the "intent to deceive" language employed by the court and the "intentionally . . . misrepresent[ed]" language in the policy.

Like the district court, we are not persuaded by United Fire's attempt to distinguish "intent to deceive" from "intentionally . . . misrepresent[ed]." As the district court noted, to "intentionally misrepresent" a fact is to make a false statement with the intent to deceive the hearer. One cannot "intentionally misrepresent" by mistake, because such a statement would necessarily be unintentional. Moreover, Missouri courts have consistently included the element of intent to deceive in their jury instructions on misrepresentation. <u>See, e.g.</u> <u>Hodge v. Continental Western Ins. Co.,</u>

722 S.W.2d 133, 134 (Mo. Ct. App. 1986); <u>Gould</u>, 331 S.W.2d at 669.  Accordingly, we find no error in the challenged instruction.

## 7.  Jury Instruction 25

In support of its refusal to approve the Trust's insurance claim, United Fire alleged that Ives had failed to protect the Inn, as required by the terms of the policy, by failing to immediately reactivate the sprinkler system after the September 4 fire. Instruction 25 told the jury that

> . . . Historic Preservation Trust had a duty under the insurance policy to take reasonable steps to protect the property from further damage after the fire of September 4, 1997, and the fire of September 7, 1997 . . . [t]herefore, if you find that United Fire & Casualty Company has shown by the preponderance of the evidence that Historic Preservation Trust failed to make reasonable steps to protect the property from further damage after the fires, you may not award damages for losses that could have been avoided . . . ."

United Fire contends that the Trust's failure to take reasonable steps to protect the Inn constituted a material breach of the policy.  Accordingly, it argues, the district court should have instructed that failure to protect the property was an absolute bar to recovery under the policy rather than merely as a bar to recovery of avoidable losses.

Again, we disagree with United Fire's arguments.  The relevant policy provision required that, in the event of loss or damage to the Inn, the Trust "[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of . . . expenses necessary to protect the Covered Property."  The policy goes on to say that "we [United Fire] will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss."  This latter phrase suggests, contrary to United Fire's contentions, that failure to protect a covered property does not

-13-

bar recovery for any covered losses. Rather, as the district court concluded, the purpose of this provision is simply to limit the insurer's liability for damage that could be prevented by the insured. In other words, the provision bars recovery only of damages that are incurred "subsequent to" an unreasonable failure on the part of the insured to protect the covered property. Accordingly, the district court did not err in giving Instruction 25.

## III.  CONCLUSION

The judgment is affirmed. The Trust's motion to strike United Fire's opening brief is denied.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.