Joseph TAUVAR, Deceased;  Geraldine Tauvar, Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

No. WD 68154.

Missouri Court of Appeals, Western District.

Sept. 9, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2008.

Application for Transfer Denied Dec. 16, 2008.

Michael T. Halloran, Overland Park, KS, for appellant.

Mark E. Parrish, Kansas City, and Richard L. Rollings, Jr., Camdenton, for respondent.

Before DIV I: LOWENSTEIN, P.J., SPINDEN and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joseph Tauvar's automobile liability policy, issued by American Family Mutual Insurance ("American Family"), provided for up to $10,000 in medical benefits in the event of an accident. Tauvar was injured in a car accident in October 1997. He subsequently filed $10,000 worth of claims for medical expenses associated with the car accident.

American Family investigated the claims, asking Dr. Jeffrey Kaplan, a neurologist, to examine Tauvar. Dr. Kaplan examined Tauvar in August 1998 and subsequently prepared a report for American Family regarding the reasonableness of past and future medical care in response to specific questions from American Family. Dr. Kaplan recommended that Tauvar un-

dergo a diagnostic EMG nerve conduction test and undergo a month of physical therapy. As to the frequency, number, and need for future chiropractic treatment, Dr. Kaplan found that no further treatment was necessary. American Family, in reliance on Dr. Kaplan's recommendations, paid $2,800.09 of the medical claims, denying claims amounting to $7,199.91, including bills from five different chiropractors.

Tauvar filed suit against American Family to recover for the medical expenses excluded from coverage under his policy and seeking damages and attorneys' fees for vexatious refusal to pay, pursuant to Sections 375.296 and 375.420.[1] At trial, American Family sought to introduce Dr. Kaplan's deposition testimony and the report he prepared and sent to American Family after he examined Tauvar. Tauvar sought to exclude any of Dr. Kaplan's evidence as to chiropractic care in a motion in limine, pointing out that Dr. Kaplan was a neurologist and did not hold a chiropractic license. Therefore, Tauvar argued, Dr. Kaplan was not competent to testify to the necessity for chiropractic care and any testimony on the subject would exceed the scope of the doctor's expertise. The trial court granted Tauvar's motion and Dr. Kaplan's evidence about chiropractic care was excluded. Tauvar introduced the portions of the report favorable to his case but the recommendations about chiropractic care were redacted from the report and the doctor's deposition testimony.

The jury returned a verdict for Tauvar awarding him $7,199.91 in medical benefits, $3,887.94 in prejudgment interest, $867.99 in penalties for vexatious refusal to pay, and $16,108.50 for attorneys' fees. The trial court denied American Family's motion for a new trial on the issue of damages for vexatious refusal. This appeal followed.

## II. DISCUSSION

In American Family's sole claim on appeal, the insurance company contends that the trial court erred in excluding Dr. Kaplan's opinion as to the necessity for further chiropractic care. American Family argues that the trial court's exclusion of that portion of the report and Dr. Kaplan's testimony relating to chiropractic care denied the insurance company a defense to Tauvar's vexatious refusal claim.

■ As a preliminary matter, this court addresses Tauvar's contention that American Family's appellate brief fails to comport with the provisions of Rule 84.04 and that American Family failed to properly preserve any error associated with the exclusion of Dr. Kaplan's testimony and report as to chiropractic care. Tauvar first alleges a number of technical violations of Rule 84.04. The violations, if any, do not impair this court from reaching the merits of American's Family claim. "The function of the appellant's brief is to explain to the court why, despite the evidence seemingly favorable to the respondent, the law requires that appellant must prevail." *Hoer v. Small*, 1 S.W.3d 569, 571 (Mo.App. 1999). American Family's appellate brief, regardless of any technical deficiencies, sufficiently apprises this court of the facts and argument necessary for this court to address the merits of the claim.

■ Tauvar next claims American Family failed to preserve any error associated with the exclusion of Dr. Kaplan's opinion as to chiropractic care. Dr. Kaplan's opinion on this issue was evidently the subject of much discussion during pretrial and the subject of a plaintiff motion in limine. The court granted Tauvar's motion in limine on the issue, but, as Tauvar

---

1. All statutory references are to RSMo (2000) unless otherwise specified.

points out, a ruling on a motion in limine is interlocutory and, without more, preserves nothing for appellate review. *Evans v. Wal–Mart Stores, Inc.,* 976 S.W.2d 582, 584 (Mo.App.1998). American Family sufficiently preserved the error when it attempted to introduce the report including Dr. Kaplan's opinion as to chiropractic care into evidence, the trial court sustained Tauvar's objection, and American Family raised the issue in its motion for a new trial. Accordingly, the claim of error as to the exclusion of evidence was properly preserved for review by this court.

█ The exclusion of evidence lies within the sound discretion of the trial court. *Whelan v. Mo. Pub. Ser.,* 163 S.W.3d 459, 461 (Mo.App.2005). Accordingly, this court reviews the exclusion of the evidence for an abuse of discretion. *Id.* " 'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Nelson v. Waxman,* 9 S.W.3d 601, 604 (Mo. banc 2000) (quoting *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991)).

█ To show vexatious refusal to pay, pursuant to Section 375.296, the plaintiff must show: (1) the claimant made a demand; (2) the insurer failed or refused to pay for a period of thirty days after the demand; and (3) the refusal to pay was vexatious and without reasonable cause. A plaintiff who successfully shows vexatious refusal may be awarded, in addition to the amount due under the contract of insurance and interest thereon, damages and attorney fees. *Id.*

█ "To support the imposition of the statutory penalty, the insured must show that the insurer's refusal to pay the loss was willful and without reasonable cause,

as the facts would appear to a reasonable and prudent person before trial." *Russell v. Farmers & Merchants Ins. Co.,* 834 S.W.2d 209, 221 (Mo.App.1992). That the insurer has suffered a judgment adverse to its contention is not a basis upon which to impose the statutory penalties. *Id.* Rather, the issue of whether a refusal was vexatious must be based on the "facts as presented at the time the insurer was asked to pay under the insurance policy." *JAM Inc. v. Nautilus Ins. Co.,* 128 S.W.3d 879 (Mo.App.2004).

█ The jury may consider a number of circumstances in determining whether an insurer's refusal to pay was vexatious, including the insurer's explanation of why it refused the claim and the nature of the insurer's investigation of the claim. *Id.* "Examples of evidence of vexatiousness include a refusal to pay based on an inadequate investigation and a denial of liability without stating any ground for denial." *Russell,* 834 S.W.2d at 221. The issue of whether an insurer's reliance on the results of an investigation was reasonable is an issue for the jury. *Id.*

█ An insurance company, in defending a claim for vexatious refusal, may introduce evidence of the facts and circumstances before it when the company denied liability, to show that the company acted in good faith and upon reasonable grounds to believe it did not have any liability under the policy. *Jones v. Atlanta Life Ins. Co.,* 247 S.W.2d 314, 316–17 (Mo.App.1952). In *Jones,* the insured died two days after a policy for life insurance was issued and delivered. *Id.* at 315. The policy provided that, in the event the insured died of certain enumerated diseases, including apoplexy, within six months of the issuance of the policy, the insurance company's liability would be limited to one-fourth the full death benefit. *Id.* At trial, the insurance company sought to introduce into evidence a coroner's post-mortem examination and a

death claim report by the Retail Credit Company, both indicating that the deceased suffered from arteriosclerosis that ultimately caused her death of apoplexy. *Id.* at 316–17. Plaintiff objected, arguing that the Retail Credit Company report was irrelevant, incompetent, and merely cumulative. *Id.* at 317.

This court reversed the judgment finding that the reports were relevant to the insurance company's defense of the vexatious refusal claim, stating that the reports "in defendant's possession strongly supported its contention that the insured was not in sound health upon the date of the issuance of the policies." *Id.* The insurance company could introduce evidence of the facts in their possession when they refused the claim. *Id.* The reports were relevant to show the character of the defendant company's investigation upon which it based its refusal to pay. *Id.* at 317–18.

In *Goodman v. State Farm Insurance Co.*, a suit for recovery under a fire insurance policy seeking damages for vexatious refusal to pay, the trial court admitted the testimony of the insurance company's investigator concerning statements made to him by neighbors linking the insured to the fire. 710 S.W.2d 423, 424 (Mo.App. 1986). The jury returned a verdict for the insurance company. *Id.* at 423.

The insured contended on appeal that the statements made to the investigator were hearsay and improperly admitted. *Id.* at 424. In affirming the judgment, this court stated: "The testimony elicited was properly admitted. It was offered not for its truth, but to establish the information in the possession of the defendant when it denied plaintiff's claim. As such, it was relevant to the vexatious refusal to pay allegations injected into the lawsuit by plaintiff's petition." *Id.*

In *Scott v. Missouri Insurance Co.*, a claim was made under a life insurance

policy after the insured died from chronic myocarditis and chronic aortitis three months after the policy was issued. 361 Mo. 51, 233 S.W.2d 660, 661–62 (Mo. banc. 1950). The insurance company denied the claim based on willful misrepresentation, contending that the insured failed to reveal a heart condition in her application for insurance. *Id.* at 662. In defending the vexatious refusal claim, the insurer sought to introduce a report of an investigation by the Retail Credit Company stating that the insured had suffered from heart trouble over a long period of time prior to making the application for insurance, and that she had been informed of her heart condition. *Id.* The report was excluded as hearsay. *Id.* The jury returned a verdict for the plaintiff. *Id.*

This court reversed the judgment finding that the report was improperly excluded. The court found that the report was not competent for proving the truth of the statements set forth, but rather, the report and the insurance company's knowledge of its contents "formed a necessary link in a chain of circumstantial evidence tending to show that defendant had made a reasonable investigation." *Id.* at 665. The court stated, further:

> Whether or not defendant acted in good faith and on reasonable grounds and evidence in denying the liability was a matter that could only be shown by proof of the evidence upon which it acted, to wit, the report in question. The report, though hearsay, was relevant and admissible on the issue of whether there was … a good faith dispute as to liability and whether the facts and evidence in defendant's possession would have caused a reasonable person to believe that there was no liability to plaintiff on the policy.

*Id.*

As in *Jones, Goodman,* and *Scott,* the portions of Dr. Kaplan's report and

testimony about chiropractic care may not have been admissible to show that Tauvar did not require chiropractic care but were relevant and admissible on the issue of whether American Family acted reasonably in denying Tauvar's claim. The evidence was not sought to establish the truth of its statements but, rather, to permit American Family to establish the results of its investigation into the question of liability and to show that it acted in good faith and on reasonable grounds in denying coverage for further chiropractic care. The entire report constituted the facts in American Family's possession and upon which it relied in denying the claim. Tauvar would be entitled to an instruction limiting the extent to which the jury could consider the evidence. *Goodman,* 710 S.W.2d at 424.

The jury was repeatedly presented with testimony that American Family relied on Dr. Kaplan's report in denying chiropractic care but denied the substance of that report. As such, the jury could not determine whether American Family acted reasonably in denying the claim. In excluding the portions of the report and testimony regarding chiropractic care, American Family was denied a defense to the vexatious refusal claim.

Tauvar would rely on *United Fire & Casualty Co. v. Historic Preservation Trust,* 265 F.3d 722 (8th Cir.2001), in arguing that portions of the report were properly excluded as more prejudicial than probative. *United Fire* dealt with the exclusion of the insured's refusal to take a polygraph about a fire. *Id.* at 728. The court found that the evidence was not relevant to the vexatious refusal claim and that such evidence was generally inadmissible as more prejudicial than probative. *Id.*

Such is not the case here. Dr. Kaplan's recommendation as to chiropractic care was relevant to whether American Family acted reasonably, was not unduly prejudicial, and was not such evidence generally excluded in a vexatious refusal claim.

Dr. Kaplan's report as to the need, number, and frequency of future chiropractic care for Tauvar was offered to show that American Family acted reasonably in denying Tauvar's claim. Whether such reliance was reasonable is a question for the jury. *See Russell,* 834 S.W.2d at 221. The trial court abused its discretion in improperly excluding the evidence, thereby denying American Family a defense to the vexatious refusal claim.

The judgment of the trial court is reversed, and the case is remanded for a trial on the issue of vexatious refusal. In that this court is remanding the suit for a new trial, Tauvar's motion for attorneys' fees on appeal, taken with the case, is hereby denied.

All Concur.