

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| FARZAD S. QURESHI, | ) | No. ED107661 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 1522-CC10460 |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | Honorable Michael W. Noble |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant. | ) | Filed:  April 7, 2020 |

## OPINION

This insured-insurer dispute between Respondent Farzad Qureshi and Appellant American Family Mutual Insurance Company stems from Qureshi's claim seeking uninsured motorist (UM) benefits under two insurance policies he purchased from American Family for the injuries he sustained when he was rear-ended by an uninsured motorist, specifically, a hit-and-run vehicle, on June 26, 2011.  On October 14, 2013, Qureshi sued American Family in two counts (1) for breach of the UM provision of the policies and (2) for vexatious refusal to pay pursuant to § 375.420[1] asserting that American Family refused to pay Qureshi the available UM coverage "without reasonable cause or excuse."  Following a three-day jury trial, the trial court entered judgment on the jury's verdict in favor of Qureshi and against American Family on both

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

counts awarding Qureshi $75,000 on his UM claim, and $18,000 in damages on his § 375.420 vexatious refusal claim in addition to $96,828 in attorney's fees.

This appeal follows. In Point I, American Family claims there was insufficient evidence to support the jury's finding of liability for vexatious refusal to pay under § 375.420. In Points II, III, IV, and V, American Family claims the trial court erred (1) by admitting into evidence the deposition testimony of American Family's corporate representatives; (2) by admitting into evidence the coverage limits of the policies and the settlement offers and demands exchanged between Qureshi and American Family during the pendency of this action; and (3) by permitting Qureshi's expert witness to opine that American Family's handling of Qureshi's UM claim was done vexatiously. We find in favor of Qureshi on all five points and affirm the judgment.

### Factual and Procedural Background

In the early morning of June 26, 2011, Qureshi was rear-ended by a hit-and-run driver while driving westbound on Interstate 270 in Ferguson, Missouri. Qureshi reported the claim to his insurer, American Family, the following day and on June 29, 2011, Qureshi spoke with the adjuster assigned to his claim, Stephanie Osbourne. Qureshi told Osbourne his vehicle was damaged and he was experiencing pain in his head, neck, and back for which he had seen a medical doctor earlier that day who prescribed muscle relaxants and pain relievers. Qureshi gave Osbourne the other vehicle's license plate number, but Osbourne was unable to locate the driver or owner. On August 2, 2011, Osbourne notified Qureshi that because American Family could not identify the driver, it was closing his file, which it did on August 11, 2011. Osbourne did not advise Qureshi at this time that a hit-and-run driver constitutes an uninsured motorist which would allow Qureshi to make a claim under the UM provisions of his American Family policies.

2

The next communication between Qureshi and American Family was on June 2, 2012 when Qureshi telephoned American Family and reported that the pain in his neck and back had significantly worsened and that he was undergoing diagnostic testing including x-rays and a CT scan to determine the source of his persistent pain. On November 9, 2012, Qureshi provided American Family at Osbourne's request a claimant fact sheet, and signed authorizations so American Family could obtain Qureshi's medical records and employment records. Osbourne did not request Qureshi's employment or medical records at that time.

The next communication between Qureshi and American Family was on April 9, 2013 when Qureshi's attorney sent a letter of representation to American Family at which point the handling of Qureshi's file was reassigned to Scott Peppler. In August 2013, Peppler asked Qureshi's attorney for an update on Qureshi's medical condition and for his medical records and bills in the event that Qureshi had finished treatment. Qureshi's attorney responded with a letter summarizing Qureshi's injuries and stating that he was still undergoing treatment.

In October 2013, Qureshi filed suit against American Family for breach of contract seeking recovery under the UM provisions of his policies and for damages for American Family's vexatious refusal to pay pursuant to § 375.420. After dismissing the original suit without prejudice, Qureshi refiled the same claims in August 2015.

The matter was tried to a jury in November 2018. The jury heard detailed evidence regarding Qureshi's injuries as documented in his medical records and over $18,000 in medical expenses. The records showed that in July 2013, an MRI ordered by orthopedic surgeon, Dr. Keith Wilkey, revealed herniated discs in Qureshi's neck at three vertebral levels. Dr. Wilkey concluded these injuries were a direct result of the June 26, 2011 collision and recommended a multi-level cervical fusion surgery. Dr. Wilkey then withdrew that recommendation and referred

3

Qureshi to a pain management specialist to consider long-term, non-surgical treatment in the form of steroid injections. Qureshi never received any steroid injections.

Qureshi then saw a second orthopedic surgeon, Dr. Matthew Gornet, who concurred with Dr. Wilkey that Qureshi's neck injuries were caused by the June 26, 2011 collision. Dr. Gornet recommended that Qureshi undergo a multi-level disc replacement surgery, which he indicated would provide Qureshi with greater mobility, faster recovery, and more substantial pain relief than steroid injections. He estimated the surgery would cost over $200,000.

On May 22, 2014, Qureshi's counsel made a demand for settlement in the amount of $100,000, an amount which he believed represented the limits of Qureshi's UM coverage under the American Family policies. Then on October 24, 2014, Qureshi's counsel sent American Family a new demand for $75,000 after he concluded that the UM limits were $75,000, not $100,000. On April 22, 2015, American Family made its sole offer to settle Qureshi's claim in the amount of $20,000, which Qureshi rejected. Then, on June 16, 2016, Qureshi re-asserted the $75,000 demand in a letter from his counsel reiterating the severity of his injuries and discussing Dr. Gornet's recommendation for the multi-level cervical disc replacement surgery and its estimated cost. This demand went unanswered by American Family.

After the court entered its judgment on the jury verdict, American Family filed a motion for new trial on grounds similar to this appeal, which the court denied.

**Discussion**

I. *Qureshi made a submissible case of American Family's vexatious refusal to pay.*

The standard of review of a trial court's denial of a motion for directed verdict is whether the plaintiff submitted substantial evidence to support each fact essential to liability. *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo.banc 2012). We review the evidence in the light most

favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with the verdict. *Id.* We will only reverse the jury's verdict for insufficient evidence when there is a complete absence of probative facts to support the jury's conclusion. *Id.*

In Point I, American Family argues Qureshi failed to make a submissible case for vexatious refusal to pay because there was insufficient evidence that American Family refused to pay or otherwise acted vexatiously during the period of time *before* Qureshi filed his lawsuit and that evidence of American Family's conduct *after* suit was filed was irrelevant and should not have been considered. We reject American Family's attempt to arbitrarily limit the evidence to its pre-suit conduct and we disagree with its assertion that Qureshi failed to make a submissible case.

The statutory cause of action against an insurance company for the vexatious refusal to pay is set forth in § 375.420:

> In any action against any insurance company to recover the amount of any loss under a policy. . .**if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse**, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict. (Emphasis added).

So, to establish his claim for vexatious refusal to pay, Qureshi had to prove: (1) that he had an insurance policy with American Family; (2) that American Family refused to pay Qureshi's losses; and, (3) that American Family's refusal was without reasonable cause or excuse. *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo.banc 2006). Our analysis is limited to the third element because American Family has not asserted that Qureshi failed to make a submissible case with respect to the first two elements.

5

Missouri law is well settled that direct and specific evidence of vexatious refusal is not required and the jury may find vexatious refusal or delay upon a general survey and consideration of the whole testimony and all the facts and circumstances in connection with the case. *Id.* (quoting *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo.banc 1984)). Thus, in determining whether an insurance company vexatiously acted, the jury may consider any facts developed prior to *trial* and is not limited to facts discovered before the lawsuit was filed. *See Hopkins v. American Economy Ins. Co.*, 896 S.W.2d 933 (Mo.App.W.D. 1995).

In light of these authorities, we find that the largely undisputed evidence at trial which we have outlined above and that we now summarize here demonstrates that Qureshi made a submissible case that American Family refused to pay his losses without reasonable cause or excuse. Qureshi was struck by a hit-and-run driver which triggered his right to receive UM benefits under his American Family policies. Initially, American Family sought to locate the hit-and-run driver which would have operated to transfer liability from American Family to that driver's insurance company. When that effort failed, American Family prematurely closed Qureshi's file without advising him that he had UM coverage available under his American Family policies.

Qureshi persisted in exerting his rights under the policies by periodically updating American Family's representatives with information in support of his claim including his on-going symptoms and treatment and access to his medical records and bills and employment records. The jury learned that Qureshi consistently complained of neck and back pain from the time of the accident through the time of trial. The medical documentation indicated that Qureshi's doctors diagnosed him with a serious cervical disc injury as a result of the June 26,

6

2011 collision, that he had incurred approximately $18,000 in medical expenses, and that his orthopedic surgeon was recommending a multi-level disc replacement surgery to his neck which would likely cost over $200,000.

For its part, American Family made a one-time offer of $20,000 while it engaged in extensive and costly litigation with Qureshi which litigation confirmed what Qureshi's medical records already demonstrated—that Qureshi's losses likely exceeded the $75,000 UM coverage limits that Qureshi had repeatedly demanded.

Based on the foregoing, we find there was sufficient evidence to support the jury's determination that American Family willfully and without reasonable cause refused to pay Qureshi's claim. Point I is denied.

II. *Excerpts of the deposition testimony of Stephanie Osbourne and Scott Peppler were properly admitted into evidence.*

American Family claims the trial court erred when it allowed into evidence certain excerpts from the depositions of Osbourne and Peppler because their testimony regarding American Family's investigation of Qureshi's UM claim was not relevant to American Family's alleged vexatious refusal. The deposition testimony at issue pertained to the questioning of Osbourne and Peppler by Qureshi's counsel regarding the nature and extent of American Family's investigation and handling of Qureshi's claim, what Osbourne and Peppler knew about Qureshi's injuries, and when they knew it. Instead of allowing Osbourne and Peppler to testify during those depositions to their personal knowledge and to American Family's corporate knowledge since they were key fact witnesses and American Family's designated corporate representatives, American Family's counsel objected that anything Osbourne and Peppler might have learned after suit was filed was protected from disclosure by the attorney-client privilege

7

and the work product doctrine, and that their testimony regarding their limited investigation of Qureshi's claim was not relevant to whether American Family acted vexatiously.

We review the trial court's admission of evidence for an abuse of discretion. *State v. Freeman*, 269 S.W.3d 422, 426 (Mo.banc 2008). When reviewing for an abuse of discretion, we presume the trial court's finding is correct, and reverse only when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo.App.E.D. 2009).

We reject American Family's claim of error for two reasons. First, in Missouri, evidence pertaining to an insurer's investigation into an insured's claim is relevant to the jury's determination whether the company vexatiously refused to pay. *Tauvar v. American Family Mut. Ins. Co.*, 269 S.W.3d 436, 439 (Mo.App.W.D. 2008). In fact, an insurer's refusal to pay based on an inadequate investigation is key exemplary evidence of an insurer's vexatiousness. *Id.* Thus, Osbourne's and Peppler's testimony about the nature and extent of American Family's investigation and knowledge regarding Qureshi's claim, including the failure to answer any questions as to anything they or American Family learned after suit was filed, was relevant to American Family's vexatious conduct and was properly admitted.

Second, the excerpts were admissible under Rule 57.07(a)(2) which provides, in relevant part, that "[d]epositions may be used in court for any purpose." Here, American Family chose to object and instruct its own corporate representatives not to answer critical questions about American Family's knowledge of Qureshi's injuries and its handling of the claim. These

8

witnesses could have explained American Family's reasoning for its claims-handling conduct and the basis for its $20,000 settlement offer. Instead, American Family strategically chose to pursue the legally unsupported path that anything that occurred after suit was filed was irrelevant to the vexatious claim and was protected by the attorney-client privilege and work product doctrine. We find no reason to depart in this instance from the general rule set forth in Rule 57.07(a)(2) that depositions may be used in court for any purpose.

Accordingly, we find no error in the trial court's admission of the deposition testimony excerpts at issue. Point II is denied.

III. *American Family's $20,000 settlement offer and Qureshi's settlement demands were properly admitted into evidence.*

American Family asserts that the trial court erred by admitting evidence of American Family's settlement offer of $20,000 and Qureshi's settlement demands because this evidence was offered as proof of American Family's liability on Qureshi's UM claim. American Family relies on the general rule that offers of settlement are not admissible against the offeree to demonstrate liability or as an admission of liability. *Banks v. Village Enterprises, Inc.*, 32 S.W.3d 780, 796 (Mo.App.W.D. 2000). We disagree with American Family because like most general rules, the rule against the admissibility of settlement offers has certain exceptions. *See, e.g., Hopkins*, 896 S.W.2d at 944-45; *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 780 (Mo.App.E.D. 2008); *Daniel v. Indiana Mills & Mfg., Inc.*, 103 S.W.3d 302, 316 (Mo.App.S.D. 2003); *Ellis v. Ellis*, 747 S.W.2d 711, 716 (Mo.App.W.D. 1988). For instance, settlement offers and demands *are* admissible in a vexatious refusal to pay case if they are relevant to the reasonableness of an insurance company's conduct. *See Hopkins*, 896 S.W.2d at 944-45.

Here, the evidence regarding the parties' settlement offers was relevant to the critical question before the jury—whether American Family's refusal to pay was without reasonable

9

cause or excuse. *Dhyne*, 188 S.W.3d at 458 (the jury may find vexatious refusal upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case). Frankly, we find it difficult to imagine any evidence more relevant to the reasonableness element in a vexatious refusal to pay case than whether defendant insurance company made a settlement offer and, if so, for how much. To exclude such evidence would force the jury to make its assessment of the company's conduct in a vacuum without "all the facts and circumstances in connection with the case." *See id.*

At its core, § 375.420 permits an insurer's refusal to pay as long as there is justification for doing so. Thus, in determining whether there was proper justification for American Family's refusal to pay, the jury could consider whether its settlement offer of $20,000 was a proper evaluation of Qureshi's UM claim in light of Qureshi's medical records and bills in American Family's possession at the time the offer was made, the available UM coverage under American Family's insurance policies, and Qureshi's settlement demands. Therefore, the challenged evidence was relevant and properly considered by the jury on the issue of American Family's vexatious refusal to pay. Point III is denied.

IV. *The trial court did not err by admitting into evidence the policy limits of American Family's UM coverage because such evidence was relevant to Qureshi's claim for vexatious refusal to pay.*

American Family argues that the limits of American Family's UM coverage was not relevant to Qureshi's UM claim. We might agree if this case only involved a claim for breach of contract involving UM coverage. But this case also involves Qureshi's claim for vexatious refusal where the paramount issue was whether the insurance company's conduct was reasonable. § 375.420; *May & May Trucking, L.L.C. v. Progressive Northwestern Ins. Co.*, 429 S.W.3d 511, 516 (Mo.App.W.D. 2014). And just as we held as to Point III above that American

10

Family's $20,000 offer was relevant to the jury's assessment whether American Family's refusal to pay was based on a reasonable cause or excuse, the limits of UM coverage available was likewise relevant to the jury's assessment of American Family's conduct. The amount of UM coverage available put into context Qureshi's demands and American Family's offer. Point IV is denied.

V.    *The trial court did not err by permitting Qureshi's expert, attorney Scott Kolker, to testify regarding American Family's vexatious behavior.*

American Family's last point claims that Kolker was not qualified to testify as an expert on the issue of whether American Family's handling of Qureshi's UM claim was vexatious under § 375.420. At the outset, we note that the qualification of an expert witness lies soundly in the discretion of the trial court. *Whitnell v. State*, 129 S.W.3d 409, 413-14 (Mo.App.E.D. 2004). Absent a manifest abuse of that discretion, we must affirm. *Id.*

Missouri's expert witness statute, § 490.065, provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by skill, knowledge, experience, training, or education may testify thereto in the form of an opinion or otherwise." As long as an expert is qualified on some basis set forth in § 490.065, "any weakness in the factual underpinnings of the expert's opinion goes to the weight that testimony should be given and not its admissibility." *Matter of Brown v. State*, 519 S.W.3d 848, 861 (Mo.App.W.D. 2017) (quoting *Elliott v. State*, 215 S.W.3d 88, 95 (Mo.banc 2007)).

Here, the record is replete with evidence of Kolker's practical experience in matters involving insurance companies' vexatious behavior that would qualify him as an expert on that subject. In particular, Kolker has been licensed as an attorney in the State of Missouri since 1994. In his first year of practice, Kolker worked at an insurance defense firm and was involved

11

in several cases in which he represented insurance companies and handled UM benefits claims on their behalf. Since then, Kolker has litigated nearly one hundred cases involving uninsured and underinsured claims against insurance companies and has represented insured parties against their insurance companies in vexatious refusal to pay claims under § 375.420.

Based on the foregoing, we find no abuse of discretion in the trial court's determination that Kolker was qualified to testify about American Family's vexatious conduct. American Family's attack on his qualifications due to the relatively small number of cases he handled representing insurance companies goes to the credibility and weight of his testimony, not its admissibility. Point V is denied.

## VI. *Attorney's fees on appeal.*

We now turn to Qureshi's motion for attorney's fees on appeal filed pursuant to this Court's Special Rule 400. Qureshi seeks attorney's fees pursuant to § 375.420.

Section 375.420 provides that the court or jury may allow a plaintiff to recover a "reasonable attorney's fee." In our foregoing disposition of this appeal, we upheld the trial court's judgment entered pursuant to the jury's verdict that American Family was obligated to pay Qureshi reasonable attorney's fees under § 375.420. Since the entitlement to attorney's fees on appeal stands upon the same ground as that at the trial court level, *Merseal v. Farm Bureau Town & Country Ins. Co. of Mo.*, 396 S.W.3d 467, 475 (Mo.App.E.D. 2013), we find American Family is obligated to pay Qureshi reasonable attorney's fees on appeal pursuant to § 375.420.

Moreover, we have the authority to determine the reasonableness of the requested fee. *Frontenac Bank v. GB Investments, LLC*, 528 S.W.3d 381, 397 (Mo.App.E.D. 2017). Here, Qureshi's request for $26,458 in attorney's fees on appeal is based on the same rate, $155 per hour, which the jury and trial court found to be reasonable. Therefore, we likewise find

12

Qureshi's request to be reasonable. Accordingly, we grant his motion for attorney's fees in the amount of $26,458.

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court. In addition, Qureshi's motion for attorney's fees on appeal is granted in the amount of $26,458.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., and
Robin Ransom, J. concur.